James McInerney, Plaintiff, *v.* New York World Telegram Corporation, Defendant.

Supreme Court, Special Term, New York County, December 17, 1937.

*Lloyd P. Stryker,* for the plaintiff.

*De Witt, Van Aken & Nast,* for the defendant.

Steinbrink, J. This is a motion to strike out the first separate defense as insufficient in law or, in the alternative, to strike out certain paragraphs of the answer as irrelevant, prejudicial and improper in form.

The complaint sets forth a cause of action in libel based upon the following editorial published by the defendant: " Mayor and Judges. In refusing to reappoint Special Sessions Justice Hyman Rayfiel, Mayor LaGuardia again proves he meant exactly what he said a year ago last April after Justices Rayfiel, Thomas F. McAndrews and James McInerney arrested sentence in the case

of John J. Sullivan, Democratic watchman-politician, convicted of continuing to act as watchman in Wallabout Market after his license had been revoked. The Mayor didn't mince his words:— 'I will not reappoint these justices because they are unfit to be judges.' Justice McAndrews' term expired shortly afterward and he was not reappointed. Justice Rayfiel is now out. If Mr. LaGuardia is still Mayor in 1938, when Justice McInerney's term ends — well, the Mayor's memory seems to be as strong as his policy in scrutinizing the conduct of judges is sound. The public has not forgotten the Sullivan Case. People v. Sullivan, 244 App. Div. 469. It has not forgotten the amazing series of arrests, delays, postponements, dismissals, acquittals, rearrests and legal quibbles involving this distinguished member of Democratic Leader Frank V. Kelly's Seneca Club, notwithstanding Market Commissioner Morgan's repeated denunciations of Sullivan as kingpin of a watchmen and carriers racket that extorted hundreds of thousands of dollars each year from farmers. Commissioner Morgan charged that Sullivan had $106,000 deposited in thirty-one banks. Federal income tax authorities filed tax claims against him totaling over $17,000. Federal prosecution resulted in a jury disagreement. But the defendant admitted he made $15,000 a year ' guarding farmers' trucks.' Sullivan maintained he was being persecuted because he was a Democrat. He certainly managed to flourish as one — with an astounding amount of freedom and protection. Joseph D. McGoldrick cited him as evidence of laxity in District Attorney Geoghan's office. Mr. McGoldrick turned out to be no rash critic of the general state of law enforcement in Kings. Mayor LaGuardia's scoring of the Special Sessions Justices last year started talk of ' a slander action,' also a solemn resolution introduced in the Democratic Board of Aldermen accusing the Mayor of ' tending to undermine the judicial system and wreck the foundation on which our government is based.' We think the judicial system and the government's foundations will be all the safer for the kind of executive responsibility and courage the Mayor has shown in refusing to reappoint judges he deems unfit. A similar, careful, non-political attitude toward the judiciary would become ALL appointing executives — up to and including the President of the United States when he names federal judges."

By way of innuendo, the plaintiff alleges that by the aforesaid publication it was intended to charge the plaintiff with improperly voting to grant Sullivan's motion to arrest judgment as a political favor because Sullivan was a member of a Democratic club, and that, in doing so, the plaintiff had submitted to political and other

kinds of pressure, that he was depicted in the editorial as " unworthy to occupy office and to be entrusted with the duties thereof, and was represented to be guilty of unlawful, dishonest, disreputable and unethical conduct, both in his official character as justice of the Court of Special Sessions and as a member of the bar." It is further alleged in the complaint that prior to the publication of the aforesaid editorial, the defendant knew that an appeal had been taken from the order arresting judgment and that the order had been unanimously affirmed by the Appellate Division. It is also alleged that publication of the aforesaid editorial was inspired by malice, recklessness, wantonness, etc., for the purpose of destroying the plaintiff's reputation as a justice of the Court of Special Sessions and as a lawyer. The defendant in its answer admits publication of the editorial and that it knew before the editorial was published that the order and arrest of judgment had been affirmed by the Appellate Division, but denies the pleaded innuendos and malice. The first separate defense is intended to show that the editorial complained of was a fair comment on the conduct of a public official, viz., the mayor's refusal to reappoint any of the justices who voted to arrest judgment in the Sullivan case, because he (the mayor) deemed them unfit to be judges. The gravamen of the complaint is that the defendant repeated the mayor's libelous statement and in doing so vouched for its accuracy. A jury may refuse to so interpret the editorial and in that event a defense of fair comment would, if established, defeat recovery.

The right of fair comment exists only when based on facts truly stated. (*Briarcliff Lodge Hotel, Inc.*, v. *Citizen-Sentinel Publishers, Inc.*, 260 N. Y. 106.) The plaintiff contends that the facts were not truly stated because of the omission to recite the affirmance by the Appellate Division of the order and arrest of judgment. The mayor's quoted statement was made in April of 1935. The decision of the Appellate Division was handed down on May 13, 1935. That the mayor persisted in his belief that the justices who participated in the arrest of Sullivan's judgment were unfit for reappointment is evidenced by his failure to appoint Justice Rayfiel, whose term expired more than a year after the Appellate Division decision. Regardless of the technical correctness of the ruling in arrest of judgment, the mayor apparently believed that it should not have been made in view of the background and activities of Sullivan in the Wallabout Market and before the various courts and tribunals. According to the theory of the defense, the plaintiff's judicial fitness or unfitness is not in issue. Rather, it is the mayor's conduct in passing upon the qualifications of those seeking reappointment to judicial office that was the subject of comment. Should a jury agree with that interpretation, it may well find that the appellate court's determination was of no materiality and that its omission from the editorial did not render the factual statements

untrue. The defense under consideration is broad enough to cover the editorial if so interpreted and is, therefore, sufficient. (*Foley* v. *Press Publishing Co.*, 226 App. Div. 535.)

The motion in the alternative to strike out parts of the answer as irrelevant, prejudicial, unnecessary and improper in form is addressed to all but five paragraphs and parts of two paragraphs of the answer. Motions of this type are addressed to the sound discretion of the court and will be denied unless retention of the allegations objected to will prejudice the moving party or its rejection will not harm the pleader. (*Dinkelspiel* v. *New York Evening Journal Co.*, 91 App. Div. 96; *Stokes* v. *Star Co.*, 69 id. 21.)

A general objection is made to many paragraphs of the answer on the ground that they do not relate to that portion of the editorial which refers to the plaintiff. But the plaintiff has pleaded the entire editorial, alleging its falsity. Having done so, he cannot be heard to complain of an attempted justification by the defendant of all of the facts therein recited. (*McAvoy* v. *Press Publishing Co.*, 164 App. Div. 355; 149 N. Y. Supp. 665; *McDonald* v. *Press Publishing Co.*, 174 id. 463.) It should be recalled that in commenting upon the mayor's conduct in the selection of judges the editorial adverts in large part to Sullivan's history and background, his activities in the Wallabout Market, his clashes with the commissioner of public markets, weights and measures, his political affiliations, his legal maneuvers, and his income tax difficulties with the Federal authorities. Paragraphs 4 to 34, inclusive, and paragraph 40 are confined to the foregoing facts and events. The editorial also refers to the mayor's statement made after judgment was arrested in the Sullivan case. Paragraphs 35 to 39, inclusive, describe the proceedings before the Court of Special Sessions on the occasion of the granting of the motion in arrest of judgment, and paragraph 42 reports the speech of the mayor at the public ceremonies opening the Bronx Terminal Market, in which the words quoted in the editorial were uttered. The editorial also recites that the mayor's speech started talk of a slander action and an aldermanic resolution. Paragraphs 43 and 45 contain statements made by the plaintiff in reply to the mayor's speech and in comment upon the Appellate Division order of affirmance. Paragraph 44 relates to the resolution of the board of aldermen. The editorial also states that Joseph D. McGoldrick cited Sullivan as evidence of laxity in law enforcement in Kings county. This is covered by paragraph 46. In paragraph 48 it is alleged that the facts and events set forth in paragraphs 42 to 47, inclusive, were widely published and commented upon in the press of New York city. Paragraph 50, under the defendant's separate and partial defense, alleges that prior

to publication of the article complained of, the facts therein stated were widely published and commented upon in newspapers in the city of New York and elsewhere.

While the defense covers a wide field, it is coextensive with the scope of the editorial pleaded in the complaint. (*McAvoy* v. *Press Pub. Co.*, *supra; McDonald* v. *Press Pub. Co.*, *supra.*) Whether evidence of the facts pleaded may be subject to some exclusionary rule is not now determined. " If, under any possible circumstances, evidence of the facts pleaded in the allegations sought to be stricken out have any bearing on the subject-matter of the litigation, then the motion will be denied." (*Dinkelspiel* v. *New York Evening Journal Pub. Co.*, *supra*, at p. 98.) The reason for the rule is stated in *Stokes* v. *Star Co. (supra)*: " It is often difficult to determine upon pleadings themselves whether or not allegations contained therein will be irrelevant and redundant when the facts are developed upon the trial, as the course of the evidence frequently makes that which at first blush might seem irrelevant to be pertinent to the peculiar phase which the case assumes." It may be argued that some of the matter pleaded is evidentiary rather than factual. The distinction between the two is often blurred, and unless the plaintiff is prejudiced by retention of the questioned allegations, any doubt should be resolved in the pleader's favor. Here the court cannot conceive of any prejudice to the plaintiff by reason of retention of those allegations. On the contrary, particularization of the facts relied upon by the defendant will permit the plaintiff to prepare intelligently for trial and will prevent any possible surprise at the trial.

The motion is in all respects denied.