DOLCIN CORPORATION, Appellant, *v.* READER'S DIGEST ASSOCIATION, INC., Respondent.

First Department, March 17, 1959.

*Sigmund Eisenstein* for appellant.

*Thomas F. Daly* of counsel (*Saul L. Sherman* with him on the brief; *Lord, Day & Lord,* attorneys), for respondent.

BREITEL, J. Plaintiff is a corporation manufacturing and distributing a chemical compound purportedly useful in the

treatment of arthritis, and advertised as such. It sues defendant, the publisher of a well-known magazine, for damages arising from publication of an allegedly libelous article concerning it and its product. After a trial, a jury rendered a verdict in favor of defendant. Plaintiff appeals, asserting errors by the court in the admission and exclusion of evidence.

Despite much discussion of refinements stemming from the " rolled-up plea " of justification and fair comment interposed by defendant, there are but two significant issues in the appeal. The first is whether a responsible publisher may assert in its article the baselessness of claims by the drug manufacturer concerning its product and rest those assertions upon widespread medical opinion in this country as establishing the truth of the facts. The second significant issue is whether the proceedings before the Federal Trade Commission, in which the drug's advertising was condemned as deceptive, are admissible to establish the truth of the facts necessary to support the fair comment upon which defendant relies. The trial court decided both issues in favor of defendant. Neither ruling is correct, and, as a consequence, the judgment in favor of defendant must be reversed and a new trial granted.

Plaintiff's drug is called " Dolcin ", from which the corporation derives its name. It is composed of acetylsalicylic acid, commonly called " aspirin ", and calcium succinate. A similar compound is manufactured and distributed by others under different brand names, although some may also add one or more inert or nutritive substances. A like product under a different brand name is manufactured and distributed in England.

Plaintiff conducts extensive advertising through various media, stressing, in extravagant terms, the beneficial effect of the drug for persons suffering from arthritis. Significant in the whole picture is the fact that arthritis is a progressive, painful, and even crippling, ailment for which medical science has not so far produced a specific cure.

Most treatment for arthritis is ameliorative or analgesic. As a consequence, ordinary aspirin is commonly used by arthritics. Concededly, however, and especially for some persons, the intake of large quantities of aspirin produces collateral harmful effects. The medical issue tendered with regard to the use of the aspirin-succinate compound is whether the compound is no better than the aspirin in it, or whether the combination permits use of large doses of the drug without the side effects of aspirin used alone.

The allegedly libelous article was entitled " Those Million-Dollar Aspirins ". Its purport was that a number of drug

manufacturers, using high-powered advertising, were selling huge quantities of drugs containing aspirin and succinate to victims of arthritis. Dolcin is one of the drugs mentioned by name. Prices at which they were sold were allegedly grossly excessive and the article concluded with the sentence " Who wants to pay $15 for 58 cents' worth of aspirin? ". The article retailed medical opinion in this country to the effect that these drugs were worthless, and even harmful, to the extent that they encourage arthritics to overdose themselves with aspirin, thus incurring the serious side effects to which reference was earlier made. After referring to the opinion of doctors and medical authorities, it is stated that " Hence the only value of these ' wonder drugs ' is as simple pain killers. They are no more effective than common aspirin ". It is also stated that " Phoniest, and perhaps most dangerous, of all the claims made for these products is that they are ' safe ' and ' nontoxic ' ". The article then recites the difficulties with the Federal regulating authorities had by a number of these manufacturers, including plaintiff, and how the manufacturers, by various devices, can delay the proceedings, avoid serious penalties, or shift from one form of the drug to another, in order to evade the administrative determinations. The article refers to sensational and unscrupulous advertising by the drug manufacturers.

There are many other things in the article which reflect adversely on the manufacturers of these drugs. What has been selected for repetition from the article are some which suggest: 1) as a fact that the drugs are worthless or harmful; and 2) that the makers and distributors of such drugs are knowingly practicing a fraud on the public. The first relates to the underlying facts which must be true in order for one to avail himself of the defense of fair comment in this libel action; the other relates to the allegedly libelous impact of the article.

Defendant's theory of the rolled-up defense of truth and fair comment, adopted by the trial court, was that the defense was made out if it had shown: 1) that expert medical opinion held that the drug Dolcin was useless, and even harmful, to its users; and 2) that the published article did no more than repeat this expert medical opinion and then draw the inferences, by way of the writer's opinion, as to the deceitful and virtually fraudulent activities of plaintiff. Thus, it was argued that whether Dolcin was a useless or harmful drug was irrelevant, so long as defendant was not attempting to make out the defense of justification or truth. All that defendant had to show was that it correctly reported widespread or universal

medical opinion with regard to the uselessness or harmfulness of Dolcin.

Plaintiff, on the other hand, argued that there is no such defense available. It stressed that fair comment is available only when the facts are truly stated and that the privilege extends only to the libelous inferences which have been drawn and expressed, provided those inferences have some reasonable or possible connection with the facts as stated. It also argued that medical opinion did not, in the context of libel law, constitute such facts which would support a defense of fair comment or a " rolled-up plea " of justification and fair comment.

In pursuance of its view, plaintiff offered the depositions of five British physicians, supposedly of standing in their country, to the effect that aspirin-succinate drugs were beneficial to arthritics and, even in some cases, curative. The basis for the British medical opinion was that the addition of the succinate to the aspirin made the user tolerant to the aspirin dosage so that the side effects of heavy doses of aspirin did not occur in most cases. This proof was rejected on defendant's argument that whether Dolcin was a useful drug, or a useless or a harmful one, was not an issue in the case. Thus, plaintiff was barred from showing that its product was a good product.

Defendant also offered proof of the proceedings before the Federal Trade Commission in which Dolcin was found to be a useless or a harmful drug and in which the advertising by plaintiff in the sale and distribution of Dolcin was condemned as misleading and deceptive. Similarly, proof of contempt convictions against plaintiff and its officers in connection with violations of enforcement orders following the determination of the Federal Trade Commission were also received in evidence. Notably, in offering this proof defendant claimed, and still urges, that these proceedings were not offered to prove the truth or rightness of the findings, namely, the fact that Dolcin was a useless or harmful drug, but to prove widespread opinion to that effect. Such opinion, defendant urged, was the fact which, if true, would establish its otherwise libelous comments in the published article as privileged fair comment. On the trial defendant suggested, but not very clearly, that there were other and broader purposes for the introduction of this proof, and now, on the appeal, it also argues that the administrative determinations were some species of *res judicata.*

The trial court charged that the published article was of such a nature and effect that, if false, it was a libel and plaintiff was entitled to pecuniary damages. It then proceeded to charge substantially the correct law with regard to the " rolled-up plea " of justification and fair comment, namely, that the facts must be truly stated, and if reasonable or possible inferences are drawn therefrom, the inferences, even though libelous in effect, were privileged if the comments were in the area of public concern meriting fair comment. The difficulty was that the court, during the trial, had ruled the " facts " to be the reiterated opinions by medical experts and writers and had precluded plaintiff from showing that the fact involved was the extrinsic one of usefulness, or uselessness or harmfulness, of the drug Dolcin. Nor did the court charge the jury whether it had any province in determining whether Dolcin was a good product or a bad product. In the context of the trial, the jury was, in effect, charged merely to decide whether the article truly reported the opinions of others, and, beyond that, whether the article expressed, by way of fair comment, reasonable or possible inferences based on those reiterated opinions.

Before proceeding to a discussion of the complete defense or " rolled-up plea " of justification and fair comment, it is useful to dispose of the partial defense of reasonable reliance upon responsible opinion. There is no question that defendant would be entitled, by way of partial defense, to establish its good faith and reliance upon responsible expert opinion in stating what it honestly believed to be the facts as to the drug Dolcin. Such a partial defense, if believed by the jury, could serve to mitigate the damages to which a plaintiff otherwise libeled might be entitled. (See Civ. Prac. Act, § 338; *Crane* v. *New York World Tel. Corp.*, 308 N. Y. 470; *Shenkman* v. *O'Malley*, 2 A D 2d 567, 573–574; *O'Connor* v. *Field*, 266 App. Div. 121.) What remains, however, to be considered is the complete defense, often termed the " rolled-up plea " of justification and fair comment.

In the law of civil libel the truth of the otherwise defamatory statements made by the defendants is a total and sufficient defense. This is the defense of justification. The making of libelous statements in an area of public interest or concern, where comment is justified by public policy, may be privileged where the libelous statements are merely expressions of opinion made in good faith and based upon extrinsic facts truly stated. This is the defense of fair comment. The defense, or " rolled-up plea ", of justification and fair comment, is a combination of both defenses. A defendant asserts that his statement of facts

and statements of opinion were both true; but that, even if the statements of opinion were false and libelous, they nevertheless are excused because they are reasonable or possible opinions, honestly expressed, without malice, and based upon facts truly stated. In other words, if the defense of truth or justification and that of fair comment are separately pleaded, together they amount to no more than alternative defenses available to the defendant; but if both defenses are combined in one defense, denominated a complete defense, it amounts to no more and has no different value than the two defenses separately pleaded. (See *Foley* v. *Press Pub. Co.*, 226 App. Div. 535, 543–544, PROSKAUER, J., and authorities cited therein.)

Defendant in this case abandoned its separately pleaded defense of justification and thereby thought that it eliminated from the case the issue of the truth of its statement of facts in the published article. However, that issue is not so easily eliminated. For the rolled-up plea simply combines the double defenses of justification and fair comment. The issue of the truth of the facts stated was still present in either of two forms: first, as a justification of the facts and the opinions stated; and second, as the condition of truly stated facts upon which fair comment must inevitably rest. Thus, assuming that defendant abandoned the restatement of the defense of justification in the rolled-up plea, there still remained the necessity for establishing that the facts were truly stated before it was entitled to assert the qualified privilege of fair comment. Put still another way, a defendant having pleaded the rolled-up plea, but having abandoned its contention that its inferences were true, as distinguished from the truly stated facts, leaves only, in effect, the defense of fair comment. (*Foley* v. *Press Pub. Co.*, *supra.*)

But howsoever the rolled-up plea may be regarded, there is no question that fair comment, whether tendered under a separate defense of fair comment or as a part of the rolled-up plea, requires that extrinsic facts must be truly stated in order to exculpate a defendant charged with having made a libelous statement. (*Julian* v. *American Business Consultants*, 2 N Y 2d 1; *Toomey* v. *Farley*, 2 N Y 2d 71; *Cheatum* v. *Wehle*, 5 A D 2d 448; *Shenkman* v. *O'Malley*, 2 A D 2d 567, *supra*; Restatement, Torts, § 606.)

There remains only the issue tendered by defendant that under the rubric of extrinsic facts there may be included the widespread opinions held by others. Once the rolled-up plea is properly understood, this becomes the whole nub of the case. In other words, defendant is urging that, if it truly reiterated

widespread expert opinions, it was then permitted to go beyond that, draw its own reasonable or possible inferences based upon those opinions, and the latter inferences, even if false and defamatory, may be privileged as fair comment.

The precise issue of reliance upon expert opinions as an extrinsic factual basis to support fair comment was raised recently in the *Shenkman* case (*supra*). It was there held that neither under existing law nor as a matter of policy did such a defense obtain in an action for libel (*Shenkman* v. *O'Malley*, 2 A. D 2d 567, 572–573, *supra*). This, of course, is old law. (*Walling* v. *Commercial Advertiser Assn.*, 165 App. Div. 26; *Van Arsdale* v. *Time, Inc.*, 35 N. Y. S. 2d 951, 955 [SHIENTAG, J.], affd. 265 App. Div. 919; *Hearst* v. *New Yorker Staats Zeitung*, 71 Misc. 7, 17 [GREENBAUM, J.], affd. 144 App. Div. 896; cf. *Patten* v. *Harper's Weekly Corp.*, 93 Misc. 368, 382–383; Restatement, Torts, § 582, Comments g, h.)

The only difference suggested by defendant in this case, as contrasted with the precedents last cited, is its assertion of the right to rely upon widespread *expert* opinion as the basis for the making of what would otherwise be libelous inferences. The distinction is not supportable in law, in logic, or as a matter of policy.

Always involved in this area is the balancing of the public interest in free discussion and the right of the individual in the preservation of his good repute. (*Foley* v. *Press Pub. Co.*, 226 App. Div. 535, *supra*.) The mere fact that an opinion is widespread may mean no more than that some earlier libel has been unusually successful. But even if that not be so, to make widespread opinions of others — even expert opinions — an exculpating basis for continued and repeated libels would mean that the person injured may be deprived of all remedy to establish the truth and stop the libel. Such a policy, too, would obviously permit the repetition of defamatory matter, no matter how false, only because it was the result of widespread or even universal opinion, which in turn might be based on the prejudices of the learned or of the ignorant. Indeed, the libel by the expert is apt to be more deadly than that by those who have no recognized standing. Moreover, in this very case the issue is tendered in a fashion limited to suit defendant's purpose: Defendant would confine the area of widespread expert opinion to this country and thus it objected successfully to the admission of the testimony of the particular British experts whose views were contrary to those of the American experts upon whom defendant relied.

Of course, there is an area in which the distinction between fact and opinion becomes a very close one. At some point there may be difficulty in determining, as a matter of law, which is the one or the other. Beyond that, the difficulty may so progress that the question becomes one to be determined by the jury because of its dependence upon conflicting evidence. (*Sherman* v. *International Pubs.*, 214 App. Div. 437; Odgers, Libel and Slander [6th ed.], pp. 161–168; Gatley, Libel and Slander [4th ed.], pp. 338–344; 1 Harper and James, Torts, pp. 457–458; 62 Harv. L. R. 1207, 1211–1213, note; see, also, *McInerney* v. *New York World Tel. Corp.*, 166 Misc. 226.) But, in this case, no such close distinction between fact and opinion is involved. The demarcation is clear. The fact issue is the value of the drug. The opinion area is what others say — even what medical experts say — with respect to the value of the drug. Hence, such opinions may never be " truly stated facts " upon which fair comment may be based.

On the foregoing analysis the inescapable issue in this case, despite the misinterpretation of the rolled-up plea, was the usefulness, or the uselessness or harmfulness, of the drug Dolcin. Not only did defendant have the burden of establishing the truth of the facts stated in its article concerning the uselessness or harmfulness of the drug Dolcin and, hence, the deception involved in its advertising and accompanying instructions for use; but plaintiff had the correlative right to prove the contradictory, namely, that its product performed as represented. On this view the exclusion of the depositions of the British physicians was incorrect.

The record is quite confused as to the purposes for which the proceedings before the Federal Trade Commission were received in evidence. Notably, insofar as any partial defense of mitigation might be involved, the proceedings had actually terminated, to the extent they affected the drug Dolcin, after the article was published. Defendant has variously argued that the proceedings were admissible because involved was further evidence of expert opinion with regard to the worthlessness and harmfulness of the drug, and also that there was involved some species of *res judicata*. On the particular record there was no proper foundation for its introduction.

Given the view that widespread or expert opinions do not provide the factual basis for fair comment, the proceedings were utterly irrelevant, for any of the purposes for which they were offered. Nor is this the exceptional situation where a party has had a prior judgment rendered against him in a tribunal, under rules providing a standard of proof higher than

that required in the case in which the judgment is offered, with regard to a fact again in issue. Then the judgment may be admissible although it is denied conclusive effect. (*Schindler* v. *Royal Ins. Co.*, 258 N. Y. 310.)

Insofar as *res judicata* is involved, the prior proceedings were not between the same parties as those involved here. Moreover, the findings in Federal administrative proceedings do not, where the parties are different, have the conclusive effect associated with the doctrine of *res judicata* or its several species. (*Griffin Grocery Co.* v. *Richardson*, 10 F. 2d 467; *Hansen* v. *Globe Ind. Co.*, 127 F. Supp. 260, revd. on other grounds *sub nom. Globe Ind. Co.* v. *Hansen*, 231 F. 2d 895.)

This is not to say that under no circumstances were the proceedings before the Federal Trade Commission receivable in evidence. It suffices that on this record they were not admissible for any of the purposes for which they were offered.

Accordingly, the judgment in favor of defendant should be reversed on the law and a new trial granted, with costs to abide the event.

BOTEIN, P. J., M. M. FRANK, MCNALLY and STEVENS, JJ., concur.

Judgment unanimously reversed on the law and a new trial granted, with costs to abide the event. Appeal from the oral decision denying plaintiff's motion to set aside the verdict and for a new trial dismissed, without costs.