**NATIONAL DYNAMICS CORP.,**
Plaintiff,

v.

**PETERSEN PUBLISHING CO. and**
**Charles Nerpel, Defendants.**

United States District Court
S. D. New York.

Aug. 11, 1960.

**574**

Bass & Friend, New York City, for plaintiff.

Engel, Judge, Miller, Sterling & Reddy, New York City, for defendant Petersen Pub. Co., John F. Reddy, Jr., Robert Bloom, New York City, of counsel.

METZNER, District Judge.

Defendant moves for judgment on the pleadings or, in the alternative, summary judgment. Plaintiff, National Dynamics Corp., is a corporation engaged in the business of selling a battery additive under the trade name "VX–6". Defendant, Petersen Publishing Co., is the publisher of a nationally distributed publication called "Motor Trend". Plaintiff alleges that defendant published in its April 1959 issue of Motor Trend an article concerning its product VX–6 which was defamatory of plaintiff.

It is defendant's contention that the complaint does not state a claim because the allegedly libelous article, given a fair reading, at worst does no more than libel the plaintiff's product and therefore it is incumbent upon plaintiff to allege special damages, which it has not done.

The law of New York is clear that where a product has been attacked, the manufacturer may only recover on a claim for libel if he alleges and proves special damages. Drug Research Corp. v. Curtis Publishing Co., 1960, 7 N.Y.2d 435, 199 N.Y.S.2d 33, 166 N.E.2d 319. Plaintiff's allegation in paragraph 13 of its complaint does not satisfy the requirement of pleading with particularity special damages since only a lump sum damage of $1,500,000 is stated with a general allegation of loss of customers. Drug Research Corp. v. Curtis Publishing Co., supra.

This complaint can only be held sufficient if the article contains accusations which impeach the integrity or business methods of the plaintiff itself, as distinguished from a libel solely of its product. New York Soc. for Suppression of Vice v. MacFadden Publications, 1932, 260 N.Y. 167, 183 N.E. 284, 86 A.L.R. 440; Hehmeyer v. Harper's Weekly Corp., 1st Dept. 1915, 170 App.

Div. 459, 156 N.Y.S. 98, and cases cited therein. It is admittedly difficult to draw the line between libel of the product and libel of its manufacturer as well. To be sure, where the publication states that the construction of an article is not as good as that of a competitor's, there is a clear libel of the product only, assuming falsity of the statement. Marlin Fire Arms Co. v. Shields, 1902, 171 N.Y. 384, 64 N.E. 163, 59 L.R.A. 310. In such a case no fair inference can be drawn that the manufacturer is practicing a deceit on the public simply because he is selling it an article that is not the best in the field.

When a product is accused of being worthless for the purpose sold, it is certainly arguable that an inference can be drawn that the public is being deceived by the manufacturer. The New York authorities, however, seem to indicate that disparagement of the product, even to the extent of saying it is completely worthless, is not sufficient to make out a case of libel *per se* of the manufacturer. Larsen v. Brooklyn Daily Eagle, 2nd Dept. 1914, 165 App.Div. 4, 150 N.Y.S. 464, affirmed 214 N.Y. 713, 108 N.E. 1098; Hehmeyer v. Harper's Weekly Corp., supra; Drug Research Corp. v. Curtis Publishing Co., supra; Seelman, The Law of Libel and Slander in N. Y., 97. Thus, insofar as this complaint alleges that defendant accused plaintiff's product of being worthless, it is insufficient in law because special damages are not pleaded.

Where a manufacturer is accused of misrepresenting his product by false and misleading advertising, this is a libel *per se* of the manufacturer. Such practices are a direct reflection on the integrity and business methods of the manufacturer. Drug Research Corp. v. Curtis Publishing Co., supra. Therefore, it is necessary to examine this article to see whether such accusations are made. Libelous language must be tested by a "fair" not a "broad" reading because the law of libel imposes a restraint on freedom of speech. Drug Research Corp.

v. Curtis Publishing Co., supra; Julian v. American Business Consultants, 1956, 2 N.Y.2d 1, 155 N.Y.S.2d 1, 137 N.E.2d 1.

Plaintiff alleges that defendant falsely accused it of misrepresenting the composition and efficacy of its product. As to misrepresentation of composition, there is nothing in the article which says or even suggests that plaintiff is not truly stating the composition of VX–6. The only reference to VX–6's composition is:

> "VX–6 is a relatively dilute solution of aluminum sulphate (6.42 grams per one-ounce tube). It contains a small amount of cadmium sulphate (.47 grams). The PH or acidity of the solution is 3.0."

There is no suggestion that plaintiff has advertised it as being of a different chemical makeup. If the above statement is false, it is at most a libel of the product and certainly not defamatory on its face of the plaintiff.

The claim that defendant falsely accused plaintiff of misrepresenting the efficacy of the product is equally baseless. Presumably plaintiff relies on defendant's analysis of plaintiff's advertising. The article has the following paragraph:

> "Interwoven throughout these endorsements are some pretty fantastic statements about rejuvenating so-called 'dead batteries.' This qualification does not seem to be backed up as to whether the cells were really dead or the battery had been abandoned as not worth rebuilding because of damaged cells. All the claims were further qualified by the term 'mechanically sound batteries.' Cells become useless when normal operation causes the by-products of the chemical reaction to deposit on the bottom of the battery case. These build up in depth until they reach the lower plates, causing them to short out. Until this happens a battery might be termed 'mechanically sound.' When it does happen, the additive marketed under the

name of VX–6 will not dissolve them as claimed."

A fair reading of this language does no more than question the usefulness of the product in situations where the ambiguous advertising might suggest it was useful. Defendant's use of the words "pretty fantastic" does not accuse the plaintiff of falsification, but simply evinces the author's opinion that the claims are hard to believe. His analysis of the words "dead batteries" and "mechanically sound" is not contested by the plaintiff as being an unnatural one. Certainly in the common use of the English language the meanings suggested are accurate. The clear inference from this language is that after a "short" occurs the battery is no longer mechanically sound. Since the author indicates that the plaintiff in its own advertising states that VX–6 will only rejuvenate mechanically sound batteries, this portion of the article only clarifies the plaintiff's own limitation on the usefulness of its product. Finally, the article, by pointing out that plaintiff only claims efficacy for its product where the battery is mechanically sound, clearly negatives any implication that plaintiff is falsely stating that the product will work on any battery.

The reference in the article to a test conducted of plaintiff's additive is clearly at most libelous of the product and not of the plaintiff.

This leaves only the allegation that defendant falsely accused plaintiff of using an unauthorized endorsement. This allegation is the only one on which a claim for libel of plaintiff might be sustained as legally sufficient. However, as to this allegation defendant moves for summary judgment on the ground that its affidavits establish the truth of this accusation.

The article reads:

"Motor Trend talked with the head of one organization whose endorsement appeared in some of National Dynamics' advertising. He was very surprised to find his company was using the product and much more surprised to find they endorsed it, as they 'do not endorse any product.' Questioning personnel in his organization brought to light a letter that an employee had written on company stationery stating that he used the product. We understand that legal action has been taken to stop the use of the company name in connection with VX–6."

The alleged endorsement which appeared in plaintiff's advertising reads:

"Hospital Endorses VX–6

" 'Batteries which were due for replacement were treated with VX–6. These batteries are now working at high performance levels thanks to VX–6.

" 'Cedars of Lebanon Hospital,
" 'Los Angeles, Cal.'
"(Excerpt from Letter)"

Defendant has submitted the affidavit of Robert W. Lyons, the assistant administrative director of the Cedars of Lebanon Hospital. He states that a letter written by Ernest L. Metz, a former employee of the hospital, on hospital stationery, endorsing VX–6, was not

"an official statement of Cedars of Lebanon Hospital, and that the use of hospital stationery and titles for this purpose was not authorized * * * the use of VX–6 was not authorized for hospital use and was never tested as a product to be used by the hospital."

Plaintiff offers no affidavit contesting the truthfulness of Mr. Lyons' assertion. It merely asserts that the letter of Mr. Metz speaks for itself. The letter, however, does not controvert anything that Mr. Lyons says, but rather corroborates his statements. The full letter, which plaintiff did not use in its advertising, reads:

"The results of the tests made on the cars of members of the maintenance staff has proven successful. The said men are nothing less than enthusiastic over VX–6 and heartily endorse it.

"The tests involved 'Worn-out' batteries which were due for replacement. These batteries are now working at high performance level, thanks to VX–6."

Nothing in this letter even suggests that the hospital, as distinguished from some of its employees, had authorized tests of the product on hospital equipment or had endorsed it.

 In Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, 718, Judge Hand stated:

"When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result."

This policy was recently reaffirmed in Schneider v. McKesson & Robbins, Inc., 2 Cir., 1958, 254 F.2d 827. There, as here, there was ample time between the time of institution of the action and the motion for summary judgment for the plaintiff to utilize the liberal discovery rules to develop facts indicating that there was a "genuine" issue of fact. Since plaintiff relies solely upon the complete text of the letter of Mr. Metz, which if anything bolsters defendant's assertion, there is no genuine issue of fact as to the truthfulness of the article relative to the use of an unauthorized endorsement.

Plaintiff states that even if Mr. Lyons' statement is true it can only serve to mitigate damages, citing Dolcin Corp. v. Reader's Digest Ass'n, 1st Dept. 1959, 7 A.D.2d 449, 183 N.Y.S.2d 342. But this is a clear misreading of that case. If Mr. Lyons' statement is true, then the statement in the article is true and is a complete defense of justification.

For the foregoing reasons, the complaint is dismissed insofar as it charges a libel of plaintiff's product, with leave to serve an amended complaint alleging special damages with particularity. Insofar as the complaint alleges a libel of plaintiff based on the charge of unauthorized use of an endorsement, summary judgment is granted to defendant.

Settle order.