15-1121-cv
Bilinski v. Keith Haring Foundation, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand fifteen.

PRESENT:  AMALYA L. KEARSE,
          REENA RAGGI,
          RICHARD C. WESLEY,
                    *Circuit Judges*.

------------------------------------------------------------------------

ELIZABETH BILINSKI, GEORGE LATHOURAS, LISA CUBISINO, JACQUELINE PETRUZZELLI, ANTHONY PETRUZZELLI, ARTHUR CANARIO, GERALDINE BIEHL, JESUS RAMOS, and LUCAS SCHOORMANS,
                    *Plaintiffs-Appellants*,


TAMI STRUM, MAXINE KOBLEY, STEPHEN KOBLEY, DIANNE DUNCAN, RANDY NICHOLS, INEZ STRYSICK, BEVERLY COSTELLO, BRENDAN COSTELLO, KHRISTOS KARASTATHIS, EVA KARASTATHIS, and GERI BERMAN,
                    *Consolidated-Plaintiffs-Appellants*,


                    v.                                    No. 15-1121-cv


THE KEITH HARING FOUNDATION, INC., THE KEITH HARING STUDIO, LLC, THE ESTATE OF KEITH HARING, JULIA GRUEN, KRISTEN HARING,

1

GILBERT VAZQUEZ, ALLEN HARING, TOM ECCLES, DAVID STARK, and JUDITH COX,

Defendants-Appellees.[*]

----------------------------------------------------------------------

APPEARING FOR APPELLANTS:     BRIAN C. KERR (David A.P. Brower, *on the brief*), Brower Piven, PC, New York, New York.

APPEARING FOR APPELLEES:     MARGARET A. DALE (Sarah S. Gold, *on the brief*), Proskauer Rose LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 10, 2015, is AFFIRMED.

Plaintiffs, owners of 111 pieces of alleged authentic artwork by Keith Haring, sued the Keith Haring Foundation (the "Foundation") and others for violation of federal antitrust laws and various state torts resulting from defendants' interference with the exhibition and sale of plaintiffs' artwork. The district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6). See Bilinski v. Keith Haring Found., Inc., 96 F. Supp. 3d 35 (S.D.N.Y. 2015). Plaintiffs now appeal from that part of the judgment dismissing their state claims for defamation (only as to plaintiff Bilinski), product disparagement, and prima facie business tort. These claims arise from a Foundation press release (the "Press Release") characterizing the settlement of its 2013 lawsuit against the organizers of Haring Miami, the exhibition at which plaintiffs' artwork had been

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

2

displayed, as an agreement to remove "fake" Haring works. As the district court noted, the agreement contains no admission of inauthenticity by the exhibition organizers. Id. at 49. We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). See New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We assume the parties' familiarity with the relevant facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Defamation

To state a claim for defamation under New York law, a plaintiff must establish, among other things, that the alleged defamatory statement was "'of and concerning [the] plaintiff.'" See Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006)). The district court concluded that plaintiffs, who were not defendants in the 2013 lawsuit, could not satisfy this element because the lawsuit described in the Press Release accused only the Haring Miami organizers—not the owners of works exhibited—of misconduct. Bilinski v. Keith Haring Found., 96 F. Supp. 3d at 50. To the extent the Press Release disparaged the purportedly inauthentic works themselves, the district court determined that such disparagement could not support a defamation claim as to the owners of the artwork. Id.

a.    Defamation by Implication

Plaintiffs argue that the district court erred in failing to consider the Press Release in the "interpretive context" of the 2013 lawsuit.   Pls.' Br. at 38; see Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997) (observing that New York considers defamatory words in context of publication to determine how they are likely to be understood "by the ordinary and average reader" (internal quotation marks omitted)).   Although the Press Release did not identify Bilinski (or any other plaintiff) by name, plaintiffs insist that it concerned Bilinski because (1) it referenced the Foundation's complaint ("Miami Complaint") and emergency motion for injunctive relief ("Emergency Motion"), making all three documents a "single integrated publication" for purposes of interpretation; and (2) both the Miami Complaint and Emergency Motion specifically mentioned Bilinski in connection with the purportedly inauthentic works.   Plaintiffs contend that the Press Release's references to "suspected fraud" "undoubtedly" concerned Bilinski because the Miami Complaint and Emergency Motion "made it very clear" that Bilinski was the owner of what the Foundation asserted were "fakes" and "forgeries," and that she allegedly participated in an exhibition "to defraud the public."   Pls.' Reply Br. at 17 (internal quotation marks omitted).   We are not persuaded.

As the district court recognized, pertinent statements made in the course of legal proceedings—such as the cited statements in the Miami Complaint and the Emergency Motion—are absolutely privileged.   See Bilinski v. Keith Haring Found., 96 F. Supp. 3d at 48 (citing Kelly v. Albarino, 485 F.3d 664, 666 (2d Cir. 2007)).   In any event, neither

4

the Miami Complaint nor the Emergency Motion represented that Bilinski then owned any of the works identified as "fake," that she provided purportedly inauthentic works to the exhibition organizers, or that she participated in Haring Miami in any capacity. The only mention of Bilinski in either document states that in 2007—six years before the exhibition—many of the disputed works had been submitted to the Foundation for authentication by or on behalf of "a collector named Liz Bilinski," and that, at that time, the "Foundation advised Ms. Bilinski that the works were not authentic." J.A. 578 (emphasis in original), 735. Moreover, the Emergency Motion alleged that the "point of Haring Miami was to converge the marketing channels of Defendants' fakes with the market for genuine works," and that the Foundation's 2007 authentication opinion demonstrated "defendants' intent to trade" the disputed works. Id. at 603, 604 (emphasis added). Only exhibition organizers were defendants in the 2013 action, not Bilinski.

Indeed, the Press Release specifically stated that the lawsuit was filed "against the organizers of an exhibition," and that this litigation was "an effort to stop the display of fake Haring works at the exhibition," after the "organizers of the exhibition . . . secured sponsorship from established organizations and companies . . . by assuring them that approximately 200 original Haring artworks were being presented." Id. at 808. The Press Release stated that in response to the Foundation's lawsuit, "the organizers of 'Haring Miami' have agreed to remove all fake Haring works from the exhibition immediately and to destroy the offending catalogue that illustrated most of the fake works." Id. Thus, this case is not akin to Levin v. McPhee, wherein a magazine's

5

publication of a book excerpt was held to concern the plaintiff because (1) the underlying book named the plaintiff and placed him at a fire; and (2) the excerpt reported an allegation that the fire was set to cover up a murder. See 119 F.3d at 194, 196. Bilinski fails plausibly to allege that she was defamed by implication.

b.    Defamation Through Ownership

Nor can Bilinski plausibly allege that she was defamed by disparagement of the "overwhelming majority" of the exhibited artwork as "fake." J.A. 577. Under New York law, "a publication defamatory of a place or product is not a libel against its owner unless the owner himself is accused of disreputable conduct." El Meson Espanol v. NYM Corp., 521 F.2d 737, 738–40 (2d Cir. 1975) (holding that article identifying restaurant as "good place[] to meet" drug dealers did not defame owner where nothing in article suggested his knowledge that persons were congregating in restaurant for illicit purpose (internal quotation marks omitted)); compare Drug Research Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435, 440, 199 N.Y.S.2d 33, 37 (1960) (holding that article disparaging drug as "gimmick" and denouncing distributor's "deceptive business activities" did not defame manufacturer), with Harwood Pharmacal Co. v. National Broad. Co., 9 N.Y.2d 460, 463, 464, 214 N.Y.S.2d 725, 727, 728 (1961) (distinguishing Drug Research because manufacturer Harwood was directly defamed by language that could readily be understood to charge it with fraud and deceit in putting dangerous product on market).

Plaintiffs nevertheless submit that when the Press Release is read in the context of the Miami Complaint's assertion that some of the inauthentic artwork exhibited at Haring

6

Miami was "for sale," a reader could reasonably understand defendants to accuse Bilinski of fraud. J.A. 577, 579. The argument fails in two respects.

First, as already observed, nothing in the Press Release, Miami Complaint, or Emergency Motion accuses Bilinski of providing artwork to or participating in Haring Miami. Second, even if defendants' statements could be interpreted to ascribe ownership of some of the displayed art to Bilinski, plaintiffs' argument—that by suing the Haring Miami organizers for exhibiting fake art and then issuing a Press Release announcing a settlement with them, defendants necessarily defamed Bilinski herself—is foreclosed as a matter of law by Drug Research v. Curtis Publ'g, 7 N.Y.2d at 440, 199 N.Y.S.2d at 37. Just as the article there at issue, which disparaged the plaintiff's product and denounced the distributor's deceptive business activities, did not concern the plaintiff's own integrity or business methods, the Foundation's assertion that most Haring Miami works were "fake," that it had settled with the defendant organizers to remove the items from display, and that it would "enforce the Foundation's rights and protect the artist's legacy in every case of suspected fraud," did not accuse Bilinski of personal misconduct.[1] J.A. 808.

In sum, because plaintiffs fail plausibly to plead any defamation by defendants that concerns Bilinski, the district court correctly dismissed this state tort claim.

_____

[1] In urging otherwise, plaintiffs contend that because only the artwork's owners could authorize a sale of their art, defendants' reference to "suspected fraud" would necessarily pertain more to the owners than to the exhibitors. But a parallel inference was adopted only by the dissenting opinion in Drug Research v. Curtis Publ'g, 7 N.Y.2d at 441, 199 N.Y.S.2d at 38 (Desmond, C.J., dissenting). It was necessarily rejected by a majority of the New York Court of Appeals.

7

2.      Product Disparagement

To recover for product disparagement under New York law, plaintiffs must show defendants' publication of a defamatory statement directed at the quality of their goods, which statement caused "special damages."  Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002) (citing Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670–71, 439 N.Y.S.2d 858, 862 (1981)); see also Albert v. Loksen, 239 F.3d 256, 271 & n.13 (2d Cir. 2001) (defining special damages as pecuniary damages for "'loss of something having economic or pecuniary value'" (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 434–35, 590 N.Y.S.2d 857, 860 (1992))).  Assuming that plaintiffs had sufficiently alleged the first element, the district court concluded that they failed to plead special damages.  See Bilinski v. Keith Haring Found., 96 F. Supp. 3d at 51.  Plaintiffs challenge this conclusion on two theories: lost sales and loss of market.

a.      Lost Sales

To assert special damages based on lost sales, a plaintiff must both name "the individuals 'who ceased to be customers, or who refused to purchase,'" and itemize "the exact damages."  Fashion Boutique v. Fendi, 314 F.3d at 59 (quoting Drug Research v. Curtis Publ'g, 7 N.Y.2d at 441, 199 N.Y.S.2d at 37–38).  The complaint here asserts that plaintiff Canario "lost the sale of artwork (including but not limited to Ex. A at 108) belonging to him" to an unidentified museum in London, and that a representative of the buyer specifically cited the allegations in the Press Release as the reason for backing out of the purchase.  Second Consol. Am. Compl. ("SAC") ¶ 114.  This is insufficient to satisfy

8

either requirement of the lost sales theory. See Drug Research v. Curtis Publ'g, 7 N.Y.2d at 441, 199 N.Y.S.2d at 37 (holding that if lost customers "are not named, no cause of action is stated," and that "round figures, with no attempt at itemization, must be deemed a representation of general damages" (internal quotation marks omitted)); see also Fashion Boutique v. Fendi, 314 F.3d at 59. While plaintiffs contend they have sufficiently pleaded the alleged lost sales as $8 million, (1) the complaint fails to specifically attribute this amount to the artwork identified in Exhibit A, and (2) plaintiffs' fifth cause of action for "Trade Libel/Injurious Falsehood" alleges damages of "an amount not less than $40,000,000," not $8 million. SAC ¶ 209.

b.    Loss of Market

Quoting the Restatement (Second) of Torts § 633 cmt. h (Am. Law Inst. 1977), plaintiffs argue that the specificity requirements of the "lost sales" theory of special damages are "relaxed," and recovery is permitted for "loss of the market," when it can be shown "with reasonable certainty" that a "[w]idely disseminated" injurious falsehood caused "serious and genuine pecuniary loss by affecting the conduct of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found." As defendants point out, the New York Court of Appeals has yet to adopt this theory of special damages.[2] In any event, plaintiffs fail to meet its requirements.

---

[2] Some district courts in this circuit have recognized the availability of the loss-of-market theory. See, e.g., Verizon Directories Corp. v. Yellow Book USA, Inc., 309 F. Supp. 2d

As an initial matter, the Restatement approves this theory only where "loss has resulted from the conduct of a number of persons <u>whom it is impossible to identify</u>." <u>Id.</u> § 633(2)(b) (emphasis added). In light of plaintiffs' allegations regarding Carnario's lost sale to a museum with whose representative he has spoken, plaintiffs do not plausibly allege the impossibility of identification. Plaintiffs maintain that the nature of the art business, "where bidders (particularly museums) frequently wish to remain anonymous, prevents the specific identification of lost customers." Pls.' Br. at 37. But the complaint's assertion that the museum at issue is "unnamed due to confidentiality concerns" does not make clear whether plaintiffs lack actual knowledge of the bidder's name, or are simply unwilling to provide it. <u>See</u> SAC ¶ 204. Much less does it assert that it would be impossible to procure identity, even with discovery.

Moreover, plaintiffs fail plausibly to plead the causation requirements of § 633 of the Restatement. <u>See</u> Restatement (Second) of Torts § 633 cmt. h (stating that plaintiff may prove loss of market "by circumstantial evidence showing that the loss has in fact occurred, and eliminating other causes"); <u>Charles Atlas, Ltd. v. Time-Life Books, Inc.</u>, 570 F. Supp. 150, 156 (S.D.N.Y. 1983) (stating that exception applies "'[i]f the possibility that other factors have caused the loss of the general business is satisfactorily excluded by

_____

401, 408 (E.D.N.Y. 2004); <u>Charles Atlas, Ltd. v. Time-Life Books, Inc.</u>, 570 F. Supp. 150, 156 (S.D.N.Y. 1983). While one New York trial court had also recognized this theory, this ruling was subsequently reversed on appeal. <u>See</u> <u>Prince v. Fox Television Stations, Inc.</u>, 33 Misc.3d 1225(A), 2011 WL 5901926, at *9 (N.Y. Sup. Ct. Nov. 23, 2011), <u>aff'd as modified</u>, 93 A.D.3d 614, 941 N.Y.S.2d 488 (1st Dep't 2012).

sufficient evidence'" (quoting W. Prosser, Handbook of the Law of Torts § 128, at 923–24 (4th ed. 1971))).

Plaintiffs insist that their allegations make clear that "the loss was the result of Defendants' Press Release, rather than a general decline in the Haring market." Pls.' Reply Br. at 6. However, plaintiffs' own complaint attributes their inability to obtain market prices for their art to their inability to authenticate their art as original Haring works. See generally SAC ¶¶ 77–80, 88–106.

Finally, even under the loss-of-market theory, plaintiffs must do more than estimate damages. See, e.g., Kirby v. Wildenstein, 784 F. Supp. 1112, 1117–18 (S.D.N.Y. 1992). Plaintiffs here allege "not less than $40 million" in damages based on all 111 pieces of Haring art owned by them. The calculation is grounded in the Miami Complaint's assertion that if "approximately 80 works of acrylic on canvas" displayed at Haring Miami were authentic, J.A. 579, each "would be worth in the range of $500,000 to $1 million." SAC ¶ 119. But the extrapolation of such an estimate not specific to any particular piece, and varying by as much as 100%, to some 30 additional works not on display is precisely the sort of generalized, round number that is too speculative and conclusory to satisfy the requirement that special damages be stated in detail. See Drug Research v. Curtis Publ'g, 7 N.Y.2d at 441, 199 N.Y.S.2d at 37; see also Kirby v. Wildenstein, 784 F. Supp. at 1117–18 (faulting plaintiff's alternate estimates that painting was worth $200,000 or $250,000 as "merely substitut[ing] one round number for another" (internal quotation marks omitted)).

11

Because plaintiffs fail adequately to plead special damages based on either lost sales or loss of the market, the district court correctly dismissed their New York claim for product disparagement.  For the same reason, it also correctly dismissed their claim for prima facie tort.  See United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 161 (2d Cir. 1996) (identifying four elements of prima facie tort: "(1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful" (emphasis added)).

3.    Conclusion

We have considered plaintiffs' remaining arguments, and we conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court