Dye, J.
In this libel action the complaint alleges that defendant Ben Pearse wrote an article entitled “Don’t Fall for the Mail Frauds ”, which appeared in the March 29, 1958 issue of the Saturday Evening Post, a magazine owned, published and circulated by defendant Curtis Publishing Company. The article contains the following statements which are complained of (Complaint, par. Eleventh) :
“ The hottest gimmick in the mail-fraud field today is the alleged weight-reducing pill. Recent emphasis by medical authorities on the harmful effect of overweight has made avoirdupois a national obsession. The underlying causes of overweight are often obscure: boredom, nervousness, unrequited love are only a few. But the cure — eating less — calls for something most fat people don’t have when it comes to food: will power.
“ That’s where the gimmicks come in. Certain drugs, medical authorities agree, have the effect of deadening the appetite. Doctors often prescribe them to help obese patients stick to a diet, but they frequently have harmful side effects and generally are available only on prescription. Yet so common is the desire to get something for nothing — in this case slimness without diet — that some schemes promising this impossibility have taken in over a million dollars a year. Forty-five such schemes, not all quite so profitable, have been barred from the mails during the past two years.
“ About a year ago, the Wonder Drug Corporation, in a flood of full-page newspaper advertisements, heralded an allegedly new reducing discovery called Regimen, which required ‘ no giving up the kinds of food you like to eat.’ In the box of green, pink and yellow pills you got for three dollars, however, were instructions warning you to avoid heavy gravies, oils, thick *438 soup, rice, spaghetti, jam, jelly, noodles, nuts, ice cream, potatoes, cake, candy, chocolate, cereal, crackers, cream, custard, bread, butter, pastry, pudding, sugar and salt.
‘1 Last June, after an investigation by postal inspectors, officials of the Wonder Drug Corporation voluntarily signed an ‘ affidavit of discontinuance, ’ agreeing to stop soliciting orders through the mail — after taking in $200,000 in six months, according to-inspectors’ estimates. Nevertheless, Begimen is still obtainable over the counter in some retail stores, where postal authorities have no jurisdiction. However, the Federal Trade Commission, which has responsibility concerning deceptive advertising when the mails are not used, has Begimen under investigation.
‘1 Why all this red tape in dealing with questionable schemes í The reason is that Congress has always been leary of interfering with the secrecy or speedy delivery of the mails. In 1868, to break up the many notorious lotteries flourishing at the time, Congress declared it unlawful to use the mails for ‘ lotteries and guessing games.’ In codifying the postal laws four years later, the unlawful list was extended to include mail concerning schemes ‘ intended to deceive and defraud the public.’ But even tpday the Postmaster General himself can’t open a letter <or refuse to deliver it, without following certain judicial or administrative procedures.
“ The judicial course is to instigate criminal charges in a Federal court, and successful prosecution will not only stop the fraud but will also punish the defrauder with a prison sentence or fine or both. Administrative action is designed to stop the fraud without imposing criminal penalties. The offender is entitled to an open hearing before an impartial examiner, but if a fraud order is issued, mail addressed to him is returned unopened to the sender, marked ‘ Fraudulent. ’
1 ‘ Because of the time element, the Post Office Department generally relies on administrative rather than court action, at least when only nominal sums are involved. A fraud order can be processed in about six months under the Federal Administrative Procedure Act, and in a matter of weeks if the firm cited voluntarily signs a discontinuance affidavit. A criminal action, on the other hand, usually takes much longer, as it did with a mail-order nursery in Bloomington, Illinois
*439 According to the complaint, the plaintiff is the manufacturer and a distributor of ‘ ‘ Regimen ’ ’, and, as stated in the briefs, Wonder Drug is a distributor.
It is further alleged that the article concerned the plaintiff; that it is “ false and defamatory as to the product Regimen and the plaintiff ’ ’; that hospital and clinical studies on obese persons had established that patients under no calorie restrictions and taking Regimen lost substantially the same amount of weight as those patients under a 1,000-calorie restriction and taking Regimen; that the published matter gave the impression, as it was intended to, that plaintiff is a swindler and engaged in obtaining money by false pretenses, misrepresentation and fraud, and is engaged in conducting a racket; that the defendants acted with knowledge of the article’s falsity, with malice, and with intent to injure plaintiff’s reputation and business; and that the article has caused drug jobbers, wholesalers, retail chain stores and others to cancel orders for, and refuse to sell, Regimen, has prompted various communications media to refuse Regimen advertising, and has caused grave injury and prejudice to plaintiff’s name and business reputation, all to the tune of $5,000,000.
The sufficiency of the pleading depends in part on whether the article, when fairly read, concerns the plaintiff. That it concerns the Wonder Drug Corporation is obvious, but nowhere does it mention the plaintiff with particularity. The complaint sets forth the connection between the alleged libel and the Drug Research Corporation in abbreviated form, pursuant to rule 96 of the Rules of Civil Practice. But the form of the allegation does not foreclose defendant from impeaching the sufficiency of the complaint on the ground that the pleading, taken as a whole, clearly removes the plaintiff from the reach of the alleged libel (Corr v. Sun Print. & Pub. Assn., 177 N. Y. 131 [1904]; Fleischmann v. Bennett, 87 N. Y. 231 [1881]). In short, rule 96 is not available to supply a deficiency in what might otherwise be a good cause of action.
The Appellate Division saw in the statement ‘ ‘ However, the Federal Trade Commission, which has responsibility concerning deceptive advertising when the mails are not used, has Regimen under investigation ’ ’ a connection with the plaintiff because Wonder Drug Corporation is not mentioned in this context. *440 This is straining to reach a result quite inconsistent with a fair reading of the text. Libelous language must be tested by a “ fair ”, not a “ broad ”, reading (cf. Tracy v. Newsday, 5 N Y 2d 134 [1959]). This is so because the law of libel imposes restraints on the right of free speech (Julian v. American Business Consultants, 2 N Y 2d 1 [1956]); and, too, always present is the possibility of resort to penal sanctions (Penal Law, §§ 1340-1349, 1937). The article in its entirety is at variance with the construction that it was written of and concerning the plaintiff. When so read, it effectively negatives the short-form allegation that the article libels the plaintiff. It is one thing to save an ineptly worded pleading by construing it liberally (Civ. Prac. Act, § 275), yet quite another to supply elements essential to the cause of action.
The only theory remaining is that the article contains matter libelous of the product, Regimen, and that it thereby constitutes a libel on the plaintiff manufacturer. The rule is that, if a product has been attacked, the manufacturer may recover in a cause of action for libel, providing he proves malice and special damages as well as the falsity of the criticism. Of course, if the accusation impeaches the integrity or business methods of the corporate manufacturer itself, no special damages need be shown (New York Soc. for Suppression of Vice v. Macfadden Pubs., 260 N. Y. 167 [1932]; First Nat. Bank of Waverly v. Winters, 225 N. Y. 47 [1918]) as the direct accusation constitutes a libel per se. In this regard, corporations enjoy the same right, that is, to plead general damages, as do individuals. Such generality, however, is not available to this plaintiff in the setting of this case. On its face, the complained of article is written of and concerning the deceptive business activities of Wonder Drug Corporation in promoting the sale of the product Regimen. This is a far cry from an alleged defamation of the integrity and business methods of the plaintiff, which, if it can be shown at all, must be shown by extrinsic facts.
Giving the pleading its most favorable construction, namely, that it states a libel on the product, it nonetheless must be dismissed for failure to allege special damages. A libel of the plaintiff’s product is not necessarily a libel of the plaintiff. Paragraphs “ Sixteenth ”, “ Seventeenth ” and “ Eighteenth ” set forth allegations of general damage. But “ ‘special damage *441 must be fully and accurately stated. If the special damage was a loss of customers * * * the persons who ceased to be customers, or who refused to purchase, must be named * * *. [I]f they are not named, no cause of action is stated.’ ” (Reporters’ Assn. of America v. Sun Print. & Pub. Assn., 186 N.Y. 437, 442 [1906]).
The damage claimed is $5,000,000. Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages (see Seelman, Law of Libel and Slander in the State of New York [1933], p. 388). It is an established rule in New York that a libel on the product is actionable by the manufacturer only if special damages are alleged (Marlin Fire Arms Co. v. Shields, 171 N. Y. 384 [1902]), with the afore-mentioned exceptions not relevant here.
Accordingly, the orders of the courts below should be reversed, with costs, and the motion to dismiss the complaint granted, with leave to serve an amended complaint alleging special damage. The questions certified are answered in the negative.