*525 OPINION OF THE COURT
Gerard M. Weisberg, J.
This is a motion to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act.
Albert I. Bivas (movant) became enrolled in the State University of New York, Empire State College (College), in November, 1974, and had earned sufficient credits for a baccalaureate degree by September, 1976. During this period, a dispute arose between movant and the College over the amount of tuition due for the courses in which he was enrolled, which caused a lengthy delay in the award of a diploma. This conflict generated numerous letters between Mr. Bivas and various members of the College administration, but was never resolved to movant’s satisfaction. Mr. Bivas paid the disputed amount of tuition on February 10, 1978, and received a degree some time after May 4, 1978.
While attending the College, Mr. Bivas was employed by the City of New York Department of Sanitation. On October 27, 1977 the New York City Department of Personnel (Personnel) inquired of the College concerning Mr. Bivas’ degree status. The registrar replied on November 9, 1977, indicating that no degree, diploma or certificate had been conferred. Mr. Bivas was subsequently discharged from his employment because he failed to meet both the educational and experience requirements for the position.
The gravamen of the claim is that the State was negligent in failing to inform Personnel that the reason for the withholding of a degree from Mr. Bivas was purely financial. Movant’s theory is that the failure to provide this qualifying information produced a false and misleading impression that he had not completed the educational requirements for the degree. The harm allegedly flowing therefrom was the loss of movant’s employment and unjustifiable delay in his ability to enter graduate school.
A motion to permit the late filing of a claim is addressed to the discretion of the court, which must consider six enumerated factors, to wit: (1) whether the delay in filing the claim was excusable; (2) whether the State had notice of the essential facts constituting the claim; (3) whether the State had an opportunity to investigate the circumstances underlying the claim; (4) whether the claim appears to be meritorious; (5) whether the failure to file a timely claim or notice of intention *526 resulted in substantial prejudice to the State; and (6) whether the claimant has any other available remedy. (Court of Claims Act, § 10, subd 6.)
The sole excuse offered for the claim’s untimeliness is movant’s ignorance of the filing requirements of the Court of Claims Act. This is not a valid excuse. (Landry v State of New York, 1 AD2d 934, affd 2 NY2d 927; Crane v State of New York, 29 AD2d 1001; Modern Transfer Co. v State of New York, 37 AD2d 756.) It nevertheless appears that the State was aware of the underlying facts of the claim during the 90 days following accrual. Moreover, the defendant is alleged to have erroneously or misleadingly reported the contents of its own records, and the purported act of negligence is memorialized in a correspondence from the College to Personnel. The State may be deemed to have notice of the contents of its own documents. Further, although the State’s attention was not directed towards Mr. Bivas’ claim during the 90-day period and, consequently, there was no opportunity to investigate at that time, this can hardly prejudice the State, similarly because of the documentary nature of the proof. (Paul v State of New York, 59 AD2d 800, revd on other grounds 66 AD2d 908.) We note further that movant does not have any alternative remedy to a suit in the Court of Claims since the only possible defendants are the State, over whom the Court of Claims has exclusive jurisdiction, and the College registrar, who would be entitled to indemnification by the State. (Plate v State of New York, 92 Misc 2d 1033.)
The crucial question, however, is whether the claim "appears to be meritorious”. (Court of Claims Act, § 10, subd 6.) In Matter of Santana v New York State Thruway Auth. (92 Misc 2d 1), it was stated that in order for a claim to appear to be meritorious, it must not be patently groundless, frivolous or legally defective, and the court must find upon a consideration of the entire record that there is reasonable cause to believe that a valid cause of action exists.
There are two principal elements to movant’s theory of liability: (1) that the College made a statement to a third party which, though true on its face, was rendered false by the failure to state qualifying facts; and (2) that the College owed movant a duty to exercise due care which entailed volunteering background information when asked a specific question concerning his degree status.
The law recognizes a cause of action for negligent *527 misrepresentation. (International Prods. Co. v Erie R. R. Co., 244 NY 331; Glanzer v Shepard, 233 NY 236; Jaillet v Cash-man, 235 NY 511; Hudleasco v State of New York, 90 Misc 2d 1057, affd 63 AD2d 1042.) As Judge Andrews stated in International Prods. Co. v Erie R. R. Co. (supra, p 338): "Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. * * * There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.”
In Hudleasco v State of New York (90 Misc 2d 1057, supra), claimant inquired of the Secretary of State , whether Uniform Commercial Code, article 9 financing statements had been filed concerning particular items of property. The Secretary of State erroneously reported that it possessed no such records. The Court of Claims (Albert A. Blinder, J.), denied the State’s motion to dismiss stating at page 1062: "There are many cases which stand for the proposition that when there is a duty to issue a certificate in a careful manner with knowledge that it would be relied on, negligent issuance will be actionable.”
A uiversity diploma is a "certificate” in the sense referred to in Hudleasco, since it represents tangible evidence of the educational level attained by its possessor, and is commonly relied upon by potential employers. No claim is made here that the College negligently issued or failed to issue a diploma per se, or that misrepresentations were made in a certificate. However, the allegedly erroneous statement concerned the existence or nonexistence of a certificate, clearly evidencing the serious nature of the information communicated, and the expectation that others would rely upon it.
A further prerequisite for the existence of a duty is the presence of a sufficient relationship between the parties. In this respect, the Bivas claim presents a factual situation different from the previous authorities cited. In those cases, the alleged misrepresentations were made to the person who ultimately sustained injury, i.e., the plaintiff, whereas Mr. Bivas claims damages for a statement made about him to a *528 third party. The element of publication to a third person is typical of actions for defamation, and specifically of a tort which Dean Prosser has called "injurious falsehood”. (Prosser, Law of Torts [4th ed], ch 25.) The gravamen of this tort is the utterance of an untrue statement about the plaintiffs business or property which induces others to refrain from dealing with him, or otherwise deprives him of prospective economic advantage. Dean Prosser states, however, that malice, comprising either ill will, scienter or deliberate falsification, is necessary to support the action, but that mere negligence is insufficient, citing Advance Music Corp. v American Tobacco Co. (268 App Div 707, revd on other grounds 296 NY 79). In that case, the plaintiff alleged that the defendant radio station had negligently and intentionally excluded the plaintiff’s song from its list of hits. Declining to find liability for negligence, the Appellate Division remarked upon the lack of any relationship between plaintiff and defendant sufficient to give rise to a duty to exercise reasonable care.*
In the case at bar, however, there was a relationship between Mr. Bivas and the College of a contractual nature, such that "in morals and good conscience”, the student had the right to rely upon the fact that the College would exercise due care in giving out information about him. (International Prods. Co. v Erie R. R. Co., supra.)
To say that a duty existed in this case is, however, only half of the story; the issue remains as to whether, upon the facts as presented, any breach thereof occurred sufficient to cast the State in damages. This question must be answered in the negative.
The principal flaw in movant’s theory of liability is that it would expand the duty of reasonable care beyond all manageable bounds. The registrar was asked a specific question on a standardized form which read: "Degree, Diploma or Certificate Received”, to which he replied: "None”. This statement faithfully and accurately responded to the question. It was unambiguous and required no qualification. Undoubtedly, there is a class of statements which, though true on their face, are so incomplete as to give a false and misleading impression. (Junius Constr. Corp. v Cohen, 257 NY 393; Noved Realty Corp. v A.A.P. Co., 250 App Div 1.) The registrar’s statement *529 was clearly not of this type. It is patently unreasonable to require that a college volunteer background information about a student’s status or financial problems when the sole inquiry being made of it concerns whether a degree has been conferred. The imposition of such a duty would require the exercise of prophetic vision. A college does not undertake general responsibility for a student’s welfare merely because it contracts to provide educational services. The employment status or future plans of the student are not strictly speaking within its purview, and we judge that the institution fulfills its entire duty in such a case by communicating the truth. We therefore find that the omission complained of does not constitute actionable negligence.
Moreover, the record does not support movant’s allegation that his entry into graduate school was delayed by any misdeeds of the State. There is no evidence whatsoever that he even made application to graduate school. It was movant’s failure to pay his tuition bill in a timely fashion which impeded any contemplated educational advancement. The merits of the billing controversy were not before the court on this motion since movant’s sole theory of liability was negligence. We do not, in any event, perceive any causal relation between the supposed miscommunication to Personnel and movant’s plans to enter graduate school.
We therefore find that this claim does not appear to be meritorious. (Court of Claims Act, § 10, subd 6.) This represents a fatal defect in movant’s application to permit a late filing. Notwithstanding the existence of other factors in movant’s favor, the court sees no justification for permitting a late filing when no valid excuse exists for the delay and the claim is patently defective.
Accordingly, the motion is denied.
Order signed.

 The Appellate Division’s dismissal of the complaint was reversed by the Court of Appeals on the theory that the allegation of intent sufficiently stated a cause of action for prima facie tort.