CHARLES ATLAS, LTD., Plaintiff,

v.

TIME–LIFE BOOKS, INC., Defendant.

No. 81 Civ. 8131(GLG).

United States District Court,
S.D. New York.

March 17, 1983.

Leighton, Conklin, Lemov, Jacobs & Buckley, Washington, D.C., and Markewich, Friedman & Markewich, P.C., New York City, for plaintiff; Daniel Markewich, New York City, Michael R. Lemov, William C. Casano, Washington, D.C., of counsel.

Cravath, Swaine & Moore, New York City, for defendant; Stuart W. Gold, Louis M. Solomon, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This is a diversity action brought by Charles Atlas Ltd. against Time-Life Books, Inc. for breach of contract and product disparagement. Before this Court is Time-Life's motion to dismiss the amended complaint.[1]

___

1. The first complaint filed in this case con- tained three causes of action: defamation,

*Product Disparagement Claim*

The product disparagement claim arises from the reproduction in the defendant's book, *Exercising for Fitness,* of the plaintiff's classic advertisement about a "97-pound weakling" who becomes a "real man" after utilizing the plaintiff's exercise system. As noted in this Court's prior opinion, the advertising reproduction is set apart from the text on the upper right hand side of the page and appears as follows:

*One of the most famous of all promotions is the "97-pound weakling" advertisement by Charles Atlas for his Dynamic-Tension body-building program. Appearing in eight languages over more than 50 years, it touted isometric exercises as a better way of "making a man out of 'Mac'" than the weight lifting that inspired Norman Rockwell's painting on page 35.*

The plaintiff alleges that the caption appearing directly above the reproduced advertisement is incorrect in describing the plaintiff's exercise system as isometric. It

product disparagement, and breach of contract. By an opinion dated July 8, 1982, this Court dismissed the complaint. With respect to the product disparagement and contract claims, however, the plaintiff was given leave to replead.

further alleges that this incorrect description in the caption, "coupled with the text of the book warning readers of the extreme dangers of isometric exercises was done intentionally or recklessly under such circumstances as to make clear to the reader that Plaintiff's program of exercise is dangerous to the user's health and should be avoided." Amended Complaint ¶ 30.[2]

The defendant argues that the plaintiff's claim for product disparagement is legally insufficient. According to the defendant, the statements at issue are not disparaging, the allegedly disparaging statements were not "directly published of and concerning" the plaintiff's product, the statements at issue could not have caused the plaintiff any legally cognizable injury (in other words, the plaintiff is libel proof), the amended complaint fails to plead malice adequately, and the amended complaint fails to plead special damages adequately. This Court does not believe that these arguments warrant dismissal of the complaint at this time.

■ First, this Court cannot say as a matter of law that the alleged misstatements are not reasonably susceptible to a defamatory meaning and that no reasonable reader could conclude that the alleged defamatory statements are published of and concerning the plaintiff's product. The reproduction of the plaintiff's advertisement and the caption above it appears on the same page as the text delineating the dangers of isometric exercises. *See supra* note 2. When the caption is read in conjunction with the text, *see Cianci v. New Times Publishing Co.,* 639 F.2d 54, 60 (2d Cir.1980) ("allegedly defamatory passages must be considered in the context of the entire article"), a reasonable reader could conclude that the plaintiff markets an isometric exercise program, that isometric exercises have gone out of favor because they are dangerous, and that therefore, the plaintiff's exercise program is dangerous. In such circumstances, the Court concludes that the alleged·misstatements are reasonably susceptible to a defamatory meaning and that a reasonable reader could conclude that the alleged defamatory statements were directly published of and concerning the plaintiff's product. Whether the trier of fact will conclude that a defamatory connotation about the plaintiff's product was indeed conveyed will have to await trial.[3]

2. The exact language of the text "warning readers of the extreme dangers of isometric exercises" is as follows.

"Isometric exercises have gone out of favor for another reason: They can be dangerous. Applying maximum force during isometric exercises usually closes the glottis, the narrowest part of the windpipe, between the vocal cords. A closed glottis prevents exhalation. Thus as the muscles (including those of the chest) contract vigorously, the pressure in the lungs rises sharply. This pressure travels through the thin walls of the lungs to the veins in the chest region. The pressure compresses the veins and reduces blood flow into the heart and to the brain; the reduction in blood flow may cause dizziness, spots before the eyes or even fainting.

Perhaps more serious, the contraction of muscles in isometric exercises greatly increases their resistance to blood flow. This causes a sharp rise in blood pressure and a consequent increase in the work load of the heart. For this reason, people with heart or blood-vessel disease should not perform isometric exercises. Even those without this ailment conceivably could harm themselves with isometrics. Fatal brain hemorrhages have been induced not by exercise but by strain similar to that caused by isometric exertion—in some instances trying too hard to move too heavy a box has burst blood vessels in the brain. Better and safer for everyone are rhythmic isotonic exercises, which promote steady blood flow and result in little increase in blood pressure.

The plaintiff also alleges that portions of this passage are incorrect. Amended Complaint ¶ 29 ("Defendant makes certain wrongful, deliberate and erroneous statements including *inter alia* . . . stating that the muscle contraction involved therein 'closes the glottis' of the throat and 'prevents exhalation,' [and] stating that such exercises result in compression·of blood vessels thereby 'reduc[ing] blood flow to the heart and brain' and 'may cause dizziness, spots before the eyes, fainting' and 'fatal brain hemorrhages.'").

3. Moreover, the Second Circuit has noted that "the issue [whether the defamation is 'of and concerning' the plaintiff] is generally left for resolution by the trier of fact." *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980).

■ Second, the plaintiff is not "libel-proof." The "libel-proof" doctrine was first articulated in this Circuit in *Cardillo v. Doubleday & Co.,* 518 F.2d 638 (2d Cir.1975). In that case, the plaintiff, an individual with an extensive criminal record, claimed that the defendants had defamed him in their book by stating that he had engaged in various criminal activities. The Second Circuit upheld the dismissal of the action because, for purposes of that case, the plaintiff was "libel-proof." *Id.* at 639. "The court reasoned that since the truth of [the plaintiff's] illicit past was as damaging as the alleged falsehoods, he was unlikely to recover anything other than nominal damages. His limited reputational interest thus did not warrant risking the First Amendment interests involved." *Simmons Ford, Inc. v. Consumers Union, Inc.,* 516 F.Supp. 742, 750 (S.D.N.Y.1981) (Weinfeld, J.) (summarizing *Cardillo v. Doubleday & Co.*); *see also id.* at 750 (summary judgment granted because, *inter alia,* "the portion of the article challenged by plaintiffs, could not harm their reputations in any way beyond the harm already caused by the remainder of the article").

Reliance on the "libel proof" doctrine, however, is misplaced in this case. The defendant does not argue that the allegedly false statements in *Exercising for Fitness* cannot harm the reputation of the plaintiff's product in any way beyond the harm caused by truthful statements. Rather, it proffers what is essentially an estoppel argument. It contends that

> "[f]or decades, the news media and books on exercise, apparently and without challenge from or exception by plaintiff, have described plaintiff's exercise system as involving isometric exercises.... Whatever injury occurred by allegedly mislabeling the Dynamic Tension System as involving isometric exercises is precisely the damage that has been done to plaintiff innumerable times in the

> past.... Given the existence of these prior, unchallenged statements, it is too late for plaintiff to complain now."

Memorandum of Defendant in Support of its Motion to Dismiss the Amended Complaint at 12–13.

This Court is unprepared to extend the "libel-proof" doctrine that far, especially in view of the Second Circuit's admonition that the doctrine "is a limited, narrow one, which we will leave confined to [the] factual context [of *Cardillo*]." *Buckley v. Littell,* 539 F.2d 882, 889 (2d Cir.), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1976); *see Bose Corp. v. Consumers Union, Inc.,* 529 F.Supp. 357, 362 (D.Mass.1981), *rev'd on other grounds,* 692 F.2d 189 (1st Cir.1982).

■ Third, despite the defendant's argument that the action must be dismissed because the plaintiff has not alleged facts sufficient to show common law malice, that is, ill will, spite, or hostility, this Court believes that malice is pleaded adequately. It is extremely questionable whether the plaintiff must show common law malice to state a claim for product disparagement. Rather, it appears that, to prevail on its claim, the plaintiff must, or at least can, show actual malice, that is, knowledge of the alleged false statement or reckless disregard as to the truth of the statement. *See Bivas v. State,* 97 Misc.2d 524, 528, 411 N.Y.S.2d 854, 858 (Ct.Cl.1978) (summarizing W. Prosser, Handbook of the Law of Torts § 128, at 921–22 (4th ed. 1971) (to support a claim for product disparagement, "malice, comprising either ill will, scienter or deliberate falsification, is necessary"); Restatement (Second) of Torts § 623A, Comment d (1977) ("A principal basis for liability for injurious falsehood [that is, product disparagement] has been that the publisher knew that the statement was false or that he did not have the basis of knowledge or belief professed by his assertion.").[4] Moreover,

---

4. The cases cited by the plaintiff simply state that malice is an element of a cause of action for product disparagement. None of the cases discuss whether malice means common-law malice, actual malice, or both. *See. Ruder &*

*Finn Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 670–71, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858, 862 (1981); *Drug Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 440, 166 N.E.2d 319, 322, 199 N.Y.S.2d 33, 37 (1960); *Marlin*

regardless of what type of malice must be shown, it appears that the plaintiff's amended complaint is sufficient. In paragraph 32, the plaintiff alleges that the allegedly false statements in *Exercising for Fitness* "were known by Defendant to be false when they were made, or were made by it with recklessness, malice and intent to injure Plaintiff." Amended Complaint ¶ 32. Clearly, this is sufficient to plead actual malice; arguably, it is sufficient to plead common law malice because Rule 9(b) of the Federal Rules of Civil Procedure provides that "malice ... may be averred generally." [5]

Finally, the plaintiff has pleaded special damages adequately. According to the plaintiff, the alleged disparagement has caused it to lose $30,323 in sales and revenues and to expend $14,000 in "special advertising expenses" and $16,687 in legal expenses to counteract the alleged disparagement. As at least one of these items of special damages is both properly pleaded and legally sufficient, the plaintiff's cause of action for product disparagement must survive the motion to dismiss.

■ Special damage is the pecuniary loss resulting directly from the effect of a defendant's allegedly wrongful conduct. *Bose Corp. v. Consumers Union, Inc., supra,* 529 F.Supp. at 361; Restatement (Second) Torts § 633 (1977); W. Prosser, *supra,* § 128, at 922. Included among the losses deemed to constitute special damages are the expenses necessary to counteract the alleged wrongful conduct, in this case, product disparagement. *Bose Corp. v. Consumers Union, Inc., supra,* 529 F.Supp. at 361, 364–65; Restatement (Second) Torts § 633 (1977); W. Prosser, *supra,* § 128, at 922. Thus, the plaintiff in this action can recover the "special advertising expenses" incurred to counteract the alleged product disparagement, and the pleading of these expenses as special damages is sufficient to support the claim for product disparagement at this stage of the litigation.[6]

■ Loss of sales is also a proper item of special damages. Pointing to a case in which the New York Court of Appeals stated that "'if the special damage was a loss of customers, ... the persons who ceased to be customers, or who refused to purchase, must be named,'" *Drug Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 441, 166 N.E.2d 319, 322, 199 N.Y.S.2d 33, 37 (1960), (quoting *Reporters Association of America v. Sun Printing & Publishing Association,* 186 N.Y. 437, 442, 79 N.E. 710, 711 (1906)), however, the defendant argues that the plaintiff has failed to plead this item of special damages adequately because it has failed to identify lost customers.

This Court is wary of accepting the defendant's argument in this case. Neither of the two major cases cited by the defendant, *Drug Research Corp. v. Curtis Publishing Co., supra,* and *Squire Records, Inc. v. Vanguard Recording Society, Inc.,* 19 N.Y.2d 797, 226 N.E.2d 542, 279 N.Y.S.2d 737 (1967), held that, even though a plaintiff itemizes special damages and alleges a specific amount representing lost sales, he cannot recover unless he names the persons who refused to purchase or ceased to be customers. In *Drug Research,* the court held that the plaintiff failed to plead special damages adequately because it merely alleged that it incurred $5 million in damages and made no attempt to itemize its damages. *Drug Research Corp. v. Curtis Publishing Co., supra,* 7 N.Y.2d at 441, 166 N.E.2d at 322, 199 N.Y.S.2d at 37–38.[7] In

*Fire Arms Co. v. Shields,* 171 N.Y. 384, 390–91, 64 N.E. 163, 165 (1902).

5. It also seems that, if the plaintiff proved that the defendant knew the falsity of the statements or if it proved that the statements were made with recklessness, malice, and intent to injure the plaintiff, ill-will, spite, or hostility could be inferred.

6. The defendant has cited no case in which a court ruled that advertising expenses to counteract a defendant's wrongful conduct do not constitute special damages.

7. The Court noted that "[t]he damage claimed is $5,000,000. Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages. It is an established rule in New York that a libel on the

*Squire Records,* the court, in a four-sentence opinion affirming an order of the Appellate Division, simply noted that, "[i]n this action for slander of title or injurious falsehood, special damages are sufficiently alleged because of the specific naming of the customers lost." *Squire Records, Inc. v. Vanguard Recording Society, Inc., supra,* 19 N.Y.2d at 798–99, 226 N.E.2d at 543, 279 N.Y.S.2d at 738. Moreover, adopting such a rule would be grossly unfair in this case. The plaintiff sells only through mail orders. It is, therefore, virtually impossible to identify those who did not order the plaintiff's product because of the article in *Exercising for Fitness.* In all likelihood, such people would simply have failed to order, thus leaving no record of their identity.

Under these circumstances, this Court rejects the arbitrary rule advocated by the defendant, a result that comports both with fairness and the modern case law. As Dean Prosser noted,

> "[t]he whole modern tendency is away from any such arbitrary rule. Starting with a few cases involving goods offered for sale at an auction, and extending to others in which there has been obvious impossibility of any identification of the lost customers, a more liberal rule has been applied, requiring the plaintiff to be particular only where it is reasonable to expect him to do so. It is probably still the law everywhere that he must either offer the names of those who have failed

to purchase or explain why it is impossible for him to do so; but where he cannot, the matter is dealt with by analogy to the proof of lost profits resulting from breach of contract. If the possibility that other factors have caused the loss of the general business is satisfactorily excluded by sufficient evidence, this seems entirely justified by the necessities of the situation.

W. Prosser, *supra,* § 128, at 923–24 (footnotes omitted); *see Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 33 (5th Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); *Bose Corp. v. Consumers Union, Inc.,* 57 F.R.D. 528, 530 (D.Mass. 1973); Restatement (Second) Torts § 633, Comments g & h (1977). The plaintiff need not, therefore, identify specific lost customers to recover for lost sales; it can attempt to prove lost sales by other means.[8]

Whether legal fees expended to prosecute a claim for product disparagement can be recovered as an item of special damages is an interesting issue. On the one hand, the defendant is correct in pointing out that, as a general rule, " '[t]he legal expenses necessarily incurred by the plaintiff beyond the taxable costs in seeking legal redress for the wrong, while a loss in a sense resulting from the wrongful act of the defendant, are not recoverable as general or special damages.' " *Doyle v. Allstate Insurance Co.,* 1 N.Y.2d 439, 444, 136 N.E.2d 484, 487, 154 N.Y.S.2d 10, 14 (1956) (quoting Clark on

---

product is actionable by the manufacturer only if special damages are alleged, with the aforementioned exceptions not relevant here." *Id.* at 441, 166 N.E.2d at 322, 199 N.Y.S.2d at 37–38 (citations omitted).

**8.** The defendant argues that, even if the plaintiff need not identify the customers lost because of the alleged disparagement, it must do more than allege the amount of lost sales. It contends that the plaintiff must, for example, also plead

> "facts showing an established business" and "[i] the amount of sales for a substantial period preceding the publication, [ii] the amount of sales for a substantial period subsequent to the publication, [iii] ["extrinsic"] facts showing that such loss in sales [was] the ["direct",] natural and probable result of such publication, and [iv] facts showing that

the plaintiff could not allege the names of particular customers who withdrew or withheld their custom."

Reply Memorandum of Defendant in Support of Its Motion to Dismiss the Amended Complaint at 9 (quoting *Bose Corp. v. Consumers Union, Inc., supra,* 57 F.R.D. at 530) (footnote omitted). Requiring the plaintiff to disclose these facts appears to be appropriate because these are facts that must be proved for the plaintiff to recover for lost sales. Because the existence of lost sales as an item of special damages is not necessary to support the cause of action for product disparagement, however, requiring the plaintiff to replead in this instance would serve no purpose other than to delay the litigation. Moreover, the Federal Rules require only notice pleading. These details are discoverable through interrogatories.

Damages). On the other hand, it can be argued that the expenses incurred in bringing the lawsuit are similar to other expenses necessary to counteract the alleged wrongful conduct. *See Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1079 (S.D.N.Y. 1980) ("[c]osts for attorneys can possibly constitute special damages" if a causal connection between the wrongful conduct and the expenditure of legal fees is shown). Be that as it may, the Court need not resolve the question at this time because it has already determined that, regardless of whether legal fees are a proper item of special damages, the plaintiff has stated a claim for product disparagement.

*Contract Claim*

██ The plaintiff's second claim is for breach of contract. The plaintiff alleges that it entered into a contract with the defendant on or about June 18, 1980. According to the plaintiff, it agreed to do two things: first, "to provide services to Defendant including searching its archives for and forwarding to Defendant the very first Charles Atlas ad that depicted a muscular young man—after the Charles Atlas training program—kicking sand in the face of the bully, and any color posters or ads for Charles Atlas products made when the company first began;" second, "to permit Defendant to use these materials in its book, *Exercising for Fitness*." Amended Complaint ¶ 17. In return for these promises, the defendant allegedly "agreed that it would not represent Plaintiff's exercise program in a derogatory manner." *Id.* The plaintiff argues that the identification of its product as "isometric," "coupled with the text describing isometric exercises as dan-

gerous to the health and safety of users, serves to cast Plaintiff, its advertisements and its product in a highly derogatory light and constitutes a breach of the . . . contract." *Id.* ¶ 23.[9]

The defendant argues that this claim must be dismissed because the contract fails for lack of consideration. Moreover, according to the defendant, no breach is alleged because the allegations of the complaint indicate that the advertisement transmitted to the defendant by the plaintiff was not used in *Exercising for Fitness*. This Court disagrees. Although the plaintiff's claim may ultimately prove to be devoid of merit, it has pleaded a contract sufficiently to survive a motion to dismiss.[10]

That the defendant did not use the advertisement submitted by the plaintiff does not mean that the defendant could not have breached the contract alleged in the complaint. The plaintiff asserts only that the defendant agreed not to represent the plaintiff's exercise program in a derogatory manner. By alleging that the defendant "cast Plaintiff, its advertisements and its product in a highly derogatory light," the plaintiff has alleged a breach of the agreement.

The Court also cannot say as a matter of law that the contract was not supported by consideration. The plaintiff has alleged the existence of a bilateral contract. Plaintiff's promises to search its archives and forward various advertisements to the defendant and to permit the defendant to use these materials in its book were consideration for the defendant's promise that it would not represent the plaintiff's exercise program in a derogatory manner.[11] The defendant's

9. The amended complaint states that these actions constitute a breach of the "written contract." At oral argument on this motion, however, the plaintiff's attorney stated that inclusion of the word "written" was a typographical error.

10. On the first motion to dismiss, the Court questioned the legal sufficiency of the plaintiff's contract claim as stated in the complaint, but granted leave to replead "because of the substantial gap between how this claim [was] alleged in the complaint and how it was argued by the plaintiff in opposition to the motion to

dismiss." The defendant now argues that the plaintiff has essentially not altered the contract claim as stated in the first complaint and that, therefore, the claim should again be dismissed. This Court disagrees. The plaintiff has substantially changed its contract theory, and these changes allow the contract claim to withstand a motion to dismiss.

11. The Court does not believe that the term "derogatory" is too indefinite to be a binding contract term. *See* J. Calamari & J. Perillo, The Law of Contracts § 2–13, at 44 n. 18 (2d ed. 1977) (discussing a case in which defend-

promise, in turn, was consideration for the plaintiff's promises. *See generally* J. Calamari & J. Perillo, The Law of Contracts, ch. 4 (2d ed. 1977).[12]

*Conclusion*

The Court's role on a motion to dismiss is a limited one: it can dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). In this case, the facts as pleaded could entitle the plaintiff to prevail on its claims. Thus, it is not appropriate to grant the defendant's motion at this time.

SO ORDERED.

ant's promise to construct a "first class theater" for the display of motion pictures was held not to be too indefinite).

12. Even if, as the defendant contends, the plaintiff's promise to permit the defendant to use the materials in the book is not sufficient consideration, the plaintiff's other promise would be sufficient to support the contract. *See* J. Calamari & J. Perillo, *supra,* § 4–23, at 174 ("If a promisor bargains for and receives several promises or performances from the other, a contract is formed if any of these performances is sufficient as consideration." (footnote omitted)).