**VERIZON DIRECTORIES CORP., Plaintiff,**

v.

**YELLOW BOOK USA, INC., Defendant.**

No.  04–CV–0251 (JBW).

United States District Court, E.D. New York.

March 22, 2004.

Schlam Stone & Dolan LLP by Richard H. Dolan, Esq., Jeffrey M. Eilender, Esq., New York City, Kirkland & Ellis LLP by Steven G. Bradbury, Esq., Winston & Strawn by Charles B. Molster, III, Esq., Washington, DC, for Plaintiff Verizon Directories Corp.

Davis Wright Tremaine LLP by Victor A. Kovner, Esq., Robert D. Balin, Esq., Sharon L. Schneier, Esq., New York City, for Defendant Yellow Book USA, Inc.

## MEMORANDUM JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

### I. *Introduction*

Verizon Directories Corporation ("Verizon") brings this action against Yellow Book USA, Inc. ("YB USA") for (1) false representations in sales and marketing communications and false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition and false advertising under sections 349 and 350 of the New York General Business Law; and (3) product disparagement under New York common law. It seeks preliminary and permanent injunctions and damages. YB USA moves to dismiss all of Verizon's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons indicated below, the motion is granted only as to the product disparagement claim. Verizon is given leave to amend its complaint as to the product disparagement claim within twenty days.

### II. *Factual Allegations*

YB USA publishes a yellow pages directory, the "Yellow Book," which competes with Verizon's yellow pages directory, the "SuperPages," in a number of major markets. YB USA promotes the Yellow Book in commercials on local and national broadcast and cable television and by use of sales representatives contacting prospective advertisers.

Verizon alleges that YB USA's commercials falsely represent that more people use the Yellow Book than use the Super-Pages. It contends that, contrary to YB USA's claims, more people use the Super-Pages than use the Yellow Book, and that it has been directly and irreparably harmed by YB USA's misrepresentations. It specifies three television commercials in its complaint. Video recordings of the three advertisements were shown at the hearing on the preliminary injunction. Each was apparently part of a coordinated campaign directed in sequence at the same television viewers.

The first commercial, the "Senior Focus Group," starts with three marketing men who work for the "Other Book" directory—which Verizon alleges is a thinly veiled pseudonym for Verizon's SuperPages—holding a focus group session with nine senior citizens. The men ask the senior citizens which book they use, the Yellow Book or the Other Book. Each senior responds that he or she uses the Yellow Book. The men then ask whether the seniors ever look at the Other Book. In response they receive only blank stares. The commercial closes with an image of the Yellow Book standing on end next to the Other Book, as a voice-over says, "More people choose Yellow Book, not the Other Book."

The second commercial, the "Apartment Lobby," opens with the same three men who work for the Other Book in the back of a van spying on an apartment building lobby. On the side of the van is a picture of the Other Book yellow pages directory and the words "The Other Book by the Phone Company." In the lobby are two large stacks of new yellow pages directories, one stack of the Yellow Book and one of the Other Book. The men watch as, one by one, residents of the apartment building come into the lobby to pick up a directory. The stack of Yellow Books quickly disappears, while all of the Other Books remain unclaimed. A voice-over says, "Today, people are choosing the Yellow Book, not that Other Book."

The third and final commercial, the "Wind Tunnel," opens on one of the marketing men from the Phone Company. He is carrying a copy of the Yellow Book and a copy of a yellow pages directory clearly titled "The Other Book by the Phone Company." He brings them into a wind tunnel that is identified as "The Phone Company Secret Test Site." The man says in disgust, "Consumers keep choosing Yellow Book yellow pages!" He holds up the Yellow Book. Two people dressed as scientists are behind a window in a control room; one says, "We'll find out which directory has the right stuff!" The marketing man places the two directories side-by-side on a platform. The scientists increase the speed of the wind machine. The Other Book gets blown away by a light wind, while the Yellow Book remains firmly in place even as the intensity of the wind increases to the point where the Other Book's marketer is blown off the screen.

Verizon claims that it has suffered significant damage as a result of the alleged misrepresentations contained in YB USA's television commercials and sales representations. It has moved for a preliminary injunction. It also seeks a permanent injunction, treble damages and other relief.

YB USA moves to dismiss all of Verizon's claims as to the television commercials on the ground that the commercials constitute nonactionable puffery as a matter of law. It also seeks dismissal of Verizon's product disparagement claim on the ground that Verizon has failed to plead special damages.

At a hearing on the preliminary injunction the court noted that it was dubious about granting a preliminary injunction without substantial survey and other evi-

dence. The parties agreed that if the case were to go forward on the merits, hearings on the preliminary and final injunctions would be conflated.

The matter was referred to the Magistrate Judge for expedited discovery. In turn, the Magistrate Judge referred the case to this court's annexed mediation services.

Addressed in this memorandum and order are YB USA's motions directed to Verizon's complaint.

### III. *Law*

#### A. *Motion to Dismiss*

##### 1. *Statement of a Claim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief may be granted." The task of the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support...." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). The court will accept the plaintiff's factual allegations as true, drawing reasonable inferences in plaintiff's favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996).

■ On a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference [or] matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002). It may also consider a document if the plaintiff relied on its "terms and effect" in drafting the complaint. *Id.* Although this rule has not been explicitly held to apply to videotapes, it should logically be, and is now so extended in view of the extensive use of videotape evidence in modern litigation. The videotapes shown at the hearing are deemed embodied in the complaint.

#### B. *Claims*

##### 1. *Lanham Act § 43(a)*

Section 43(a) of the Lanham Act provides that

> any person who ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

■ A plaintiff must allege that: (1) the defendant made false or misleading representations regarding the nature, characteristics, or quality of the plaintiff's services or commercial activities; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) the defendant's actions made the plaintiff believe it would be damaged by the representations. *Galerie Gmurzynska v. Hutton*, 257 F.Supp.2d 621, 629 (S.D.N.Y.2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004).

An advertisement must be: "(1) ... literally false as a factual matter, or (2) although ... literally true, ... likely to deceive or confuse customers." *Lipton v. The Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (citing *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991)); *see also Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992).

■ Context of the advertisement is critical, for it is "fundamental to any task of interpretation ... that text must yield to context." *Avis Rent A Car Sys., Inc. v. The Hertz Corp.*, 782 F.2d 381, 385 (2d. Cir.1986) ("[T]he Supreme Court long ago

inveighed against the tyranny of literalness."). In addition to its text, a commercial's visual images will be considered in determining falsity. *S.C. Johnson & Son, Inc. v. The Clorox Co.*, 241 F.3d 232, 238 (2d Cir.2001).

False representations of fact are distinguished from puffery. Puffery is a somewhat amorphous concept. In the Lanham Act context, puffery has been defined alternately as "an exaggeration or overstatement expressed in broad, vague, and commendatory language," *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993); as "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion," *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir.2000); and as an "exaggerated, blustering, and boasting statement upon which no reasonable buyer would rely," *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.1997). *See also Lipton v. The Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995); *Groden v. Random House, Inc.*, No. 94 Civ. 1074, 1994 WL 455555 at *17 (S.D.N.Y. Aug 23, 1994), *aff'd*, 61 F.3d 1045 (2d Cir.1995); 4 J. Thomas McCarthy, McCarthy on Trademark and Unfair Competition, § 27:38 (4th ed.1998).

■ Puffery is not actionable under the Lanham Act because it "cannot be proven either true or false." *Lipton*, 71 F.3d at 474 (quoting *Groden*, 1994 WL 455555 at *5); *see also Bologna v. Allstate Insurance Co.*, 138 F.Supp.2d 310, 322–23 (E.D.N.Y.2001) (granting motion to dismiss Lanham Act claim on ground that slogan "you're in good hands with Allstate" was mere puffery).

2. *Unfair Competition and False Advertising Under New York Law*

■ New York General Business Law section 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York. N.Y. Gen. Bus. Law § 349 (Consol.2003). Section 350 prohibits "false advertising in the conduct of any business." N.Y. Gen. Bus. Law § 350 (Consol.2003). In order to state a claim under sections 349 and 350, a plaintiff must allege that (1) the defendant's act, practice or advertisement was consumer-oriented; (2) it was materially deceptive and misleading; and (3) that plaintiff was injured as a result. *St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.*, 264 A.D.2d 652, 696 N.Y.S.2d 117, 122 (N.Y.App.Div.1999); *see also Stutman v. Chemical Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995); *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 525 (S.D.N.Y.2003); *Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc.*, 190 F.Supp.2d 407 (E.D.N.Y.2002). "A deceptive practice ... need not reach the level of common-law fraud to be actionable under section 349." *Stutman*, 709 N.Y.S.2d 892, 731 N.E.2d at 612; *Binder v. Nat'l Life of Vt.*, 2003 WL 21180417 at *5, 2003 U.S. Dist. LEXIS 8431 at *15–16 (S.D.N.Y.2003).

Puffery is not actionable under sections 349 and 350, for much the same reasons that it is not illegal under the Lanham Act. *See, e.g., Lacoff v. Buena Vista Publishing, Inc.*, 183 Misc.2d 600, 705 N.Y.S.2d 183, 191 (2000) (dismissing claims under sections 349 and 350 because certain language "is not actionable, as it is simply puffery or opinion"); *Cytyc Corp. v. Neuromedical Systems, Inc.*, 12 F.Supp.2d 296, 300 (S.D.N.Y.1998); *cf. Pelman*, 237 F.Supp.2d at 527–28 (stating that even if certain allegedly misleading statements had been raised in the complaint, they "likely would not have been actionable"

under sections 349 and 350 because they appeared to consist of puffery).

### 3. Product Disparagement Under New York Law

■ " '[P]roduct disparagement' refers to words or conduct which tend to disparage or reflect negatively on the quality, condition or value of a product or property." *Kirby v. Wildenstein*, 784 F.Supp. 1112, 1115 (S.D.N.Y.1992); *see also Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 522 (1981); *DeMarco–Stone Funeral Home v. WRGB Broadcasting Inc.*, 203 A.D.2d 780, 610 N.Y.S.2d 666, 667 (1994). To state a claim of product disparagement under New York law, a plaintiff must allege (1) the falsity of the statement; (2) publication to a third person; (3) malice or actual malice; and (4) special damages. *See Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 199 N.Y.S.2d 33, 166 N.E.2d 319, 322 (1960); *Ruder & Finn Inc.*, 439 N.Y.S.2d 858, 422 N.E.2d at 522; *Kirby*, 784 F.Supp. at 1115. Courts applying New York law have dismissed product disparagement claims on the ground that the statements at issue were puffery. *See, e.g., Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1209 (S.D.N.Y.1986) (dismissing product disparagement claim because representations that certain computer programs were "better" than plaintiff's programs were puffery).

■ Special damages are an integral part of a product disparagement claim. Special damages are pecuniary losses (including loss of sales) resulting from a defendant's allegedly wrongful conduct. *Drug Research Corp.*, 199 N.Y.S.2d 33, 166 N.E.2d at 322; *Charles Atlas, Ltd. v. Time–Life Books, Inc.*, 570 F.Supp. 150, 155 (S.D.N.Y.1983). Allegations of special damage "must be fully and accurately stated. If the special damage was a loss of customers ... the persons who ceased to be customers, or who refused to purchase, must be named...." *Drug Research Corp.*, 199 N.Y.S.2d 33, 166 N.E.2d at 322 (citation omitted); *see also De Marco–Stone Funeral Home v. WRGB Broadcasting Inc.*, 203 A.D.2d 780, 610 N.Y.S.2d 666, 667 (3d Dep't 1994); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir.2002). A plaintiff who has not alleged special damages with the requisite specificity has failed to state a cause of action for product disparagement. *See Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 522 (1981); *DeMarco–Stone Funeral Home*, 610 N.Y.S.2d at 667; *Kirby v. Wildenstein*, 784 F.Supp. 1112, 1116 (S.D.N.Y.1992).

Some courts have allowed a narrow exception to the rule that plaintiffs seeking to recover for lost sales must identify their lost customers with particularity when such identification is difficult because of the nature of the relationship between a defendant and its clients. *See, e.g., Charles Atlas, Ltd. v. Time–Life Books, Inc.*, 570 F.Supp. 150, 156 (S.D.N.Y.1983) (allowing exception because plaintiff sold only by mail order, making it difficult to identify those who did not order because of defendant's misrepresentations); *cf., Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F.Supp.2d 235, 240 (S.D.N.Y.1999) (disallowing exception because misrepresentations were not widely disseminated), *aff'd*, 314 F.3d 48 (2d Cir. 2002). If the defendant's disparaging comments are disseminated widely, and the nature of the plaintiff's business prevents the specific identification of lost customers, those customers need not be named. *Fashion Boutique*, 75 F.Supp.2d at 240.

### IV. Application of Law to Facts

#### A. Motion to Dismiss

YB USA urges review and evaluation of each television commercial separately,

while Verizon insists that the commercials should be viewed together as part of a coordinated and comprehensive campaign. Even assuming that defendant's commercials should be evaluated separately, plaintiff has alleged facts sufficient to make out a prima facie claim as to each of the commercials under section 43(a) of the Lanham Act and sections 349 and 350 of the New York General Business Law.

### 1. *Lanham Act § 43(a)*

■ YB USA moves to dismiss Verizon's Lanham Act claim on the ground that its commercials consist of mere puffery. A viewing of YB USA's commercials *in toto* and with consideration of their visual imagery as well as their sound suggests that they might be interpreted by consumers to mean that more people use the Yellow Book than use the Verizon SuperPages.

On a literal level the commercials are merely playful and absurd. No one would believe that an adult finding two free directories at the doorstep would leave one; both would almost certainly be taken. Even a young child would know that a blast of air that could blow away both a yellow pages directory and an adult would not leave another directory of similar heft unaffected. *Cf.,* Alison Gopnick, *Finding Our Inner Scientist,* Daedalus, Winter 2004, at 21, 27 ("[B]y the time children are four they will ... uncover causal structure.").

Literalness is not what these commercials are about. They are skillfully crafted and shown at great expense to subtly but firmly communicate an idea—that the Yellow Book is preferred by users to Verizon's book and that, more to the point, advertisers will reach more potential consumers if they put their names and money in the former rather than the latter.

Publishers of yellow pages directories generate revenue through the sale of advertising in their pages. Potential advertisers make the decision to purchase space within a directory based largely on that directory's usage rate. A higher usage rate means more advertising revenue for the directory favored by the public. The creators of television commercials are well paid for their ability to subtly communicate specific messages while appearing to say almost nothing.

A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare, "Because I appreciate that the television campaign is just expressing a far-fetched opinion and not making a statement of fact, all viewers must appreciate it as well." Yet, that is what the court is expected to do when it is asked to characterize a video as "mere puffery." Arguably, the communication intended by YB USA and understood by the viewer is defendant's—to wit, "The Yellow Book is preferred by potential users over the competitor's." It may, however, mean something quite different to the viewer. This central issue cannot be resolved without surveys, expert testimony, and other evidence of what is happening in the real world of television watchers and advertisers in yellow pages.

At the level of a motion directed to the pleadings, the extensive citations submitted by the parties to widely disparate cases where the communication was characterized as "puffery" or "fact" are almost useless. The characterization is similar to that of proximate cause, a rule that the court applies on an ad hoc basis where it thinks recovery should not be permitted for largely unexpressed reasons of policy and repressed biases. *Cf.,* Anne C. Dailey, *Holmes and the Romantic Mind,* 48 Duke L.J. 429, 447 (1998) ("[Oliver Wendell] Holmes ... used 'unconscious' to describe the process of legal decisionmaking;

judges, lawyers and legislators were unconscious of the true grounds for their own decisions."); Oliver Wendell Holmes, Speech, The Path of the Law After One Hundred Years: The Path of the Law (January 8, 1897), 110 Harv. L.Rev. 991 (1997) ("I think that the judges themselves have failed adequately to recognize their duty of weighing considerations of social advantage. The duty is inevitable, and the result of the often proclaimed judicial aversion to deal with such considerations is simply to leave the very ground and foundation of judgments inarticulate, and often unconscious...."); *Allegheny College v. The Nat'l Chautauqua County Bank of Jamestown,* 246 N.Y. 369, 159 N.E. 173, 175 (1927) ("Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made.") (Cardozo, Ch. J.).

Analytical transparency begins with an accurate assessment of the facts—here what the defendant-communicator intended to communicate and what was communicated to the intended communicant, not what a communication means to a judge. In the present case the court is not prepared to say how users and advertisers would be affected by these commercials and what YB USA's salespersons are saying to prospective advertisers who have seen them. Evidence is required on a motion for summary judgement or at trial. The motion to dismiss on the pleadings on the theory of puffery cannot be granted.

### 2. Unfair Competition and False Advertising under New York Law

YB USA's motion to dismiss Verizon's claims pursuant to New York General Business Law sections 349 and 340 on the ground that its commercials consist of puffery is denied for the reasons discussed in section IV.A.1, *supra.*

### 3. Product Disparagement under New York Law

██ YB USA moves to dismiss Verizon's common law product disparagement claim and argues that Verizon has failed to plead special damages. Verizon does not, in its complaint, identify any customers who have ceased advertising in the Super-Pages as a result of YB USA's television commercials. It argues that its situation resembles that of the plaintiff in *Charles Atlas.*

In *Charles Atlas* the plaintiff brought a product disparagement action to recover for lost sales resulting from misrepresentations about its magazine advertisement in defendant's book. The plaintiff's advertisement featured a "97–pound weakling" who turned into a "real man" after using the plaintiff's exercise system. The plaintiff sold its system only through mail order. The court found that because of the nature of the plaintiff's business, it would be impossible for the plaintiff to identify those who did not order the system because of the defendant's misrepresentations. The court therefore did not require the plaintiff to identify specific lost customers to recover for the lost sales.

Here, Verizon makes no representation that it is in the nature of its business not to have direct contact with its customers. Verizon is a four billion dollar company which competes fiercely across the country. It would be striking if such a large organization would be unable to identify even one customer it had allegedly lost as a result of YB USA's commercials. In fact, at the hearing on the motion to dismiss, the parties agreed that the complaint could be readily amended to allege special damages.

### B. Amending the Complaint

Verizon should be granted an opportunity to amend its claim to allege special damages.

### V. *Conclusion*

YB USA's motion to dismiss is granted as to Verizon's product disparagement claim. Verizon is granted leave to amend its product disparagement claim within twenty days. The motion is denied as to Verizon's other New York law claims and its Lanham Act claim.

SO ORDERED.